The State ex rel. Runge vs. Anderson.

---

THE STATE EX REL. RUNGE, Appellant, vs. ANDERSON, City Clerk, Respondent.

*September 6 — September 20, 1898.*

| 100 | 523 |
| s42 LRA | 237 |
| s42 LRA | 239 |
| 42 LRA | 245n |
| 51 LRA | 115n |

| 100 | 523 |
| 59 LRA | 93 |

*Elections: Mandamus to control form of ballot: Jurisdiction on appeal after election: Judgment: Double printing of names: Construction of statutes: Constitutional law.*

1. In a proceeding by *mandamus* to control the form of the official ballot to be used at an election, the fact that the election has taken place before a decision in the appellate court does not deprive that court of jurisdiction to determine all the questions presented; and although, in such a case, the writ will be denied, yet if the lower court should have granted the relief sought, the relator will be entitled to a reversal, with costs, of the order denying such relief, and to recover his costs in the lower court, with nominal damages.

2. *Mandamus* to compel a city clerk to place twice on the official ballot the name of a candidate who has been nominated by two parties, will not be granted merely because such double printing is not prohibited by statute.

The State ex rel. Runge vs. Anderson.

3. Ch. 288, Laws of 1893, after providing that the several regular party tickets shall each be printed on the official ballot in one column under the appropriate party designation, further provided that, " when any person is nominated for the same office by more than one party or convention, his name shall be placed in each column in which the nominations of such parties or conventions are given." This latter provision was changed by sec. 2, ch. 348, Laws of 1897, to the following: "When any person is nominated for the same office by more than one party or convention his name shall be placed upon the ticket under the designation of the party which first nominated him; or if he was nominated by more than one party or convention at the same time, he shall, within the time fixed by law for filing certificates of nomination, file with the officer with whom his certificate of nomination is required to be filed a written election indicating the party designation under which he desires his name to be printed on the ballots, and it shall be so printed. If he shall refuse or neglect to file such an election, the officer with whom the certificate of nomination is required to be filed shall place his name under the designation of either of the parties by which he was nominated, *but under no other designation whatever.*" *Held,* that all double printing of names is forbidden, even in case all the candidates of one party are also the nominees of another.

4. A statute providing that regular party tickets shall each be printed on the official ballot in one column under the appropriate party designation is not unconstitutional because it further provides, in effect, that the name of a candidate shall not appear under more than one party designation, and that no party shall be entitled to a place on the ballot unless it polled a certain percentage of the total vote at the preceding general election, where, by other provisions, the right of any voter to vote for any person for any office is preserved. WINSLOW, J., dissents, being of the opinion that it is an unwarrantable interference with the freedom of election to debar one party from indorsing the candidates of another party except on pain of surrendering its existence as a party and its right of representation upon the official ballot in the future.

APPEAL from an order of the circuit court for Milwaukee county: D. H. JOHNSON, Circuit Judge.    *Affirmed.*

At the proper time prior to the spring election in the city of Milwaukee for 1898, the Democratic party duly placed in nomination candidates for the several offices to be voted for at such election, the petitioner being the nominee for the of-

fice of city attorney, and thereafter duly certified such nominations to the city clerk as required by law.　The day after the making of such nomination, the People's party also duly nominated the same persons as its candidates for such offices, and thereafter duly certified the same to the city clerk. Each of said parties polled the required number of votes at the preceding general election to entitle its candidates to have their names printed under its party designation on the official ballot, subject to the provision of the ballot law that no name can be printed more than once on the ballot for the same office.　The city clerk refused to print the names of the candidates more than once, or otherwise than under the designation of the party first placing them in nomination, to wit, the Democratic party.　The petitioner thereupon, on a petition in due form setting forth the facts, obtained an alternative writ of *mandamus* to compel the printing of the names of the candidates under the designation of the People's party as well as that of the Democratic party.　On the return of the alternative writ, on motion of respondent it was quashed, and from the order entered to that effect the petitioner appealed to this court.

*Edgar L. Wood*, attorney, and *F. W. von Cotzhausen*, counsel, for the appellant.

*Howard Van Wyck*, for the respondent.

MARSHALL, J.　This appeal presents interesting and important questions under the election law of 1897.　The action was commenced, as the statement of facts discloses, prior to the spring election of 1898, and could only be effectual to secure the object sought, by a final determination in time to control the form of the official ballot to be used at such election.　That has long since passed into history, so a judgment now entered, that the writ of *mandamus* issue pursuant to the petition of the appellant, would be without force and of no benefit to him whatever.　Therefore, manifestly, under

The State ex rel. Runge vs. Anderson.

the uniform practice in such cases, such a judgment should not be entered; nevertheless, if the relator was entitled to the relief sought when the order appealed from was entered, he is entitled to a reversal of such order with costs, and to recover his costs in the lower court, with nominal damages, as in case of an action for damages for a false return. R. S. 1878, sec. 3453; 5 Wait, Prac. 592. To the extent of such costs and damages the case is not affected by the changed condition which compels a denial of the writ, so no reason is perceived why the appeal should not proceed to a final determination of all questions presented. This much is said, not because of any objection to the jurisdiction of the court. or to a determination of any of the questions argued in the briefs of counsel, as both sides, as we understand it, desire such determination, but because attention was called on the argument and in the briefs to the circumstances of the situation as if some doubt existed in the minds of counsel as to whether the court has now jurisdiction to determine the appeal, or whether, if it has such jurisdiction, it is bound to exercise it. Of course, if the subject of the action has been withdrawn from the jurisdiction of the court by reason of lapse of time, counsel cannot confer it by any submission they may make, and it would be our duty to dismiss the proceedings. But, as before stated, no reason is perceived why the questions raised by the motion to quash are not all preserved for review on this appeal, and before us for consideration and determination.

The first contention of the appellant is that the statute contains no express prohibition against placing the name of a candidate receiving two nominations on the ballot twice, and he cites language from secs. 38, 41, Stats. 1898, as follows: "When any person is nominated for the same office by more than one party or convention his name shall be placed upon the ticket under the designation of the party which first nominated him." "Except as in this chapter otherwise pro-

vided, it shall be the duty of each county clerk and city clerk
to provide printed ballots for every election for public officers
to be voted for in his county or city, and to cause to be
printed in the appropriate ballot the name of every candidate
whose name has been duly certified to or filed with him."
Suppose it to be true that the language quoted does not pro-
hibit the placing of the name of a candidate twice on the
official ballot; certainly, that does not impose upon the officer
charged with the duty of preparing such ballot the duty of
double printing to satisfy the mere wishes of one or all par-
ties.    That is a sufficient answer to the application for a writ
of *mandamus* to compel such printing, for it is not within
the office of the writ to compel an officer to do more than
what the law clearly requires of him.    Before the petitioner
for a writ of *mandamus* is entitled thereto, he must show
more than that there is a public wrong specially injurious to
him.    He must show that such wrong consists of some failure
of official duty clearly imposed by law, and that there is no
other adequate specific legal remedy.    The duty must be
positive, not discretionary, and the right must be so clear as
not to admit of any reasonable controversy.    These principles
are so elementary as not to call for discussion or support by
a citation of authorities, and effectually answer the conten-
tion that appellant was entitled to a writ to compel the put-
ting of his name twice on the official ballot because such
double printing is not prohibited.

It is further contended that if it be true that the officer
whose duty it was under the law to prepare the official bal-
lot was not bound to place the name of a person nominated
by two political parties on the ballot twice when only one
or any number less than all the candidates on the ticket are
interested, the statute expressly requires such double print-
ing where all have received two nominations, and in support
of that, language in sec. 38, Stats. 1898, is referred to as fol-
lows: " The several regular party tickets nominated by con-

ventions or by regularly constituted and authorized committees shall each be printed in one column, under the appropriate party designation, the columns to be arranged alphabetically according to the first letter of the party name." That language is followed in the act of 1893 [ch. 288], in the same section [28], with the following: " When any person is nominated for the same office by more than one party or convention, his name shall be placed in each column in which the nominations of such parties or conventions are given." That was changed by the amendatory act of 1897 [ch. 348, sec. 2] to the following: " When any person is nominated for the same office by more than one party or convention his name shall be placed upon the ticket under the designation of the party which first nominated him; or if he was nominated by more than one party or convention at the same time, he shall, within the time fixed by law for filing certificates of nomination, file with the officer with whom his certificate of nomination is required to be filed a written election indicating the party designation under which he desires his name to be printed on the ballots, and it shall be so printed. If he shall refuse or neglect to so file such an election, the officer with whom the certificate of nomination is required to be filed shall place his name under the designation of either of the parties by which he was nominated, but under no other designation whatever." Taking the amended section as a whole, the legislative intent to provide for the printing of the name of each candidate regularly nominated and certified by a party convention, having the legal qualification to be known as a party, once on the official ballot, and to expressly prohibit the printing of it otherwise, seems to be too clear for controversy. The first part of the amendatory act, in mandatory language, requires the printing of the name of a candidate receiving two nominations under the party designation of the party first nominating him instead of under both party designations as required by the

The State ex rel. Runge vs. Anderson.

old law, and that is followed by the very plain provision that, in case of two nominations at the same time, the candidate shall have his choice as to the party designation under which his name shall appear, and that is followed by the further provision that if he fails to make a choice between the two nominations the officer shall make the choice for him and the name shall be printed accordingly and under no other designation whatever. The rule that language which is plain does not admit of judicial explanation or construction applies here. The words referred to will admit of but one construction, therefore we are bound to take that as expressing the legislative will and give force to it, unless it contravenes some provision of the state or national constitution. The language of the first part of the amendment, to wit, "his name shall be placed upon the ticket under the designation of the party which first nominated him," carries with it by implication, in view of the language of the old act which it displaces, a prohibition against double printing. Then the prohibiting clause with which the amendment terminates as clearly refers to all that precedes it as if the punctuation were such as to indicate such reference.

But it is contended that if the meaning of the language discussed in the foregoing is in accordance with the conclusion which we have reached, it has no application to a case where all the candidates of one party are also the nominees of another, and that contention is supported by reading into the statute a provision something like this: provided however that this shall not apply to cases where the candidates nominated by one party and duly certified as herein provided are identical with those nominated and certified by another party having the requisite qualification to nominate. Courts may supply omitted words or even clauses where the meaning is clear from the context and such words and clauses are necessary to harmonize all parts of the act with its evident controlling purpose, but not otherwise. No such condition

is presented by the act under consideration, but on the contrary the legislative idea, unmistakably expressed, is that the name of a person shall appear as a candidate for public office but once on the official ballot, and no word or clause can be read into the act by construction not consistent with that plain purpose, without violating one of the plainest rules for judicial construction. Suth. Stat. Const. §§ 261, 262; *Gilbert v. Dutruit*, 91 Wis. 661; *Clokus v. Hollister M. Co.* 92 Wis. 325; *Lake Co. v. Rollins*, 130 U. S. 662.

But it is said that the law is not constitutional because it violates sec. 3, art. III, of the constitution of Wisconsin, which provides that all votes shall be by ballot. To support that, it is argued that the law takes from the voter the constitutional privilege of making his own ballot and depositing it as so prepared. No reason for this contention is perceived. The word "ballot" and the expression "vote by ballot" had a well-understood and universal meaning at the time of the adoption of the constitution, and it must be taken as the law that the thought which was in the minds of the framers of the constitution was in harmony with such meaning. Any attempt to go outside of that would be usurpation, not interpretation or construction. It would be a method of judicial procedure that would render any legislation, however plainly worded, subject to change by judicial construction to suit the judgment of courts as to the best legislative policy. The word "ballot" means, in the election of public officers, and always meant, a paper so prepared by printing or writing thereon as to show the voter's choice, and "vote by ballot" the deposit of such paper in a box in such a way as to conceal the voter's choice if he so desires. In that sense and in no other the words were used in the constitution, and they secure to each person entitled to vote the rights which their meaning clearly conveys, and they are in no way interfered with by the act under consideration. The official ballot, so called, is not complete when furnished to the elector as he

enters the booth to prepare his ballot. It is a mere form for a ballot. When marked and prepared by the voter so as to show his choice at the election, then, and not till then, does it become his constitutional ballot; and it is not, and cannot be, contended but that the freest opportunity practicable is given under the law for the voter to deposit such ballot so as to conceal his choice of candidates, indicated therein, if he so desires. It follows that no constitutional guaranty in regard to voting by ballot is in any way contravened.

Our attention is called in the briefs of counsel to many cases where constitutional and other questions are discussed under laws similar to the Wisconsin law, and considerable significance is given to some which require notice in this opinion. The one most relied on is *Fisher v. Dudley*, 74 Md. 242. The court there decided that a candidate twice nominated was entitled to two places on the ticket as a candidate for the same office, but the decision turned on the construction of the Maryland statute, not on any constitutional question. It was held that the plain purpose of the legislature, by the language used, was to give each person nominated a place on the ticket for each nomination he received in any of the ways provided for by law. Of course neither the decision nor the reasoning leading up to it can have any weight in this case, inasmuch as we hold that by plain language of the Wisconsin statute the double printing of the names of candidates is expressly prohibited.

In *Sawin v. Pease* (Wyo.), 42 Pac. Rep. 750, the law under consideration provided for the printing of the names of the candidates in alphabetical order, with the designation of the nominating party, and the court held that the name of each candidate could be placed upon the ticket but once. There was no express requirement one way or the other as to double printing. The question turned upon the construction of the language used and the general purpose of the

act. In *Simpson v. Osborn*, 52 Kan. 328, it was held that under the Kansas statute a candidate was entitled to have his name printed under as many party designations as he received nominations. In *Miller v. Pennoyer*, 23 Oreg. 364; *State ex rel. Sturdevant v. Allen*, 43 Neb. 651; and *People ex rel. Eaton v. District Court*, 18 Colo. 26, the contrary was held, all turning, however, on the particular wording of the particular statute under consideration. No valuable purpose will be served by quoting at length from the opinions. Suffice it to say that all support the views to which we have arrived, so far as the questions considered are similar.

There are several other cases, some of which are cited in the briefs of counsel and some not, where laws similar in most respects to the Wisconsin law were challenged on constitutional grounds, because of the feature limiting the parties entitled to be named on the official ballot to such as polled a specified percentage of the total vote at the preceding general election, in that such provision discriminates between classes of voters and unreasonably interferes with the freedom of the elective franchise. We are unable to find that any of such attacks were successful except in *Eaton v. Brown*, 96 Cal. 371. When that case is carefully read and understood in the light of subsequent changes in the California law and the position of the court thereafter, it will be readily seen that it does not support the contention of appellant. The law, when the case arose, contained such a method of marking to designate the voter's choice that the effect of marking the head of the ticket, intending to vote what may be called the straight ticket, and of marking an individual nomination or a candidate outside of such straight ticket, was that the whole vote was thereby rendered void, and as the straight ticket often only included the state officers, while local parties placed in nomination local officers, it was impossible for a voter to so mark his ticket as to vote for some person for each office. On that ground, and

not because of the mere qualification for party representation on the ballot, the law was declared unconstitutional by a majority of the court. A minority, consisting of two justices, held the law unconstitutional solely because of the qualification. At the next session of the legislature the objection which ruled the case was removed by amendment, leaving the qualification for party representation on the ticket without change, and, on the law as changed being again challenged, it was sustained, two justices dissenting. *Craig v. Brown,* 114 Cal. 480. So we are safe in saying that the decision in *Eaton v. Brown, supra,* is not authority to the point that a reasonable qualification for party representation upon an official ballot is an unconstitutional discrimination between different classes of voters. On the contrary the California court sustains the qualification, and to the same effect are *Ransom v. Black,* 54 N. J. Law, 446; *State ex rel. Sturdevant v. Allen,* 43 Neb. 651; *Todd v. Board of Election Comm'rs,* 104 Mich. 474; *State ex rel. Bateman v. Bode,* 55 Ohio St. 224; *DeWalt v. Bartley,* 146 Pa. St. 529; *Miner v. Olin,* 159 Mass. 487. With few exceptions every state in the Union now has a ballot law modeled after the so-called Australian system, and all have some qualification for party representation upon the official ballot, and many, either by express provision or by judicial construction, prohibit the double printing of names of candidates upon it. In no case that we have been able to find, or to which our attention has been called by counsel, is that feature held to render the law unconstitutional.

If a question can be settled beyond reasonable controversy by judicial authority outside our own jurisdiction, it would seem that the objections raised to the Wisconsin ballot law in this case have been so settled. Manifestly, the right to vote, the secrecy of the vote, and the purity of elections, all essential to the success of our form of government, cannot be secured without legislative regulations. Such regulations,

The State ex rel. Runge vs. Anderson.

within reasonable limits, strengthen and make effective the constitutional guaranties instead of impairing or destroying them. Some interference with freedom of action is permissible and necessarily incident to the power to regulate at all, as some interference with personal liberty is necessary and incident to government; and so far as legislative regulations are reasonable and bear on all persons equally so far as practicable in view of the constitutional end sought, they cannot be rightfully said to contravene any constitutional right. To paraphrase from the language of Chief Justice MARSHALL as to implied powers conferred by the national constitution,— so long as the end be legitimate and within the scope of the constitution, all means appropriate and plainly adapted to such end and consistent with the letter and spirit of the constitution, if not prohibited, are constitutional; but if the legislature proceeds beyond the limits indicated, so as to leave no reasonable doubt on the question, its act will meet the bar of the constitution, as maintained by that branch of the government to which such maintenance is specially intrusted, and such branch will not hesitate to nullify such act. We are unable to see anything in the present ballot law which passes beyond the bounds of reasonable regulation in view of the end sought,— the right of all to vote in secrecy and upon the basis of political equality and purity. True, a political party cannot be represented as such on the official ballot unless it polled, at the preceding general election, at least two per cent. of the votes cast in the election district, but that does not in any manner prevent any voter from voting for any person he sees fit, for any office. The law requires blanks to be left under the name of each candidate, sufficient for the voter to write a name therein in place of the one printed. He is permitted thus to split his ticket as he sees fit, so that it will contain the names of some candidates of one party and some of another, according to his choice, and then he is permitted to vote the ticket so pre-

pared by a single mark at the top in the place provided for that purpose, or he may designate the candidates of his choice by separate markings, and all reasonable safeguards are thrown around him to prevent his so marking his ticket as to lose his vote for any candidate he desires to vote for. In addition he is permitted to prepare a sample ballot on a form similar in all respects to the official ballot except as to the color of the paper, and take it with him into the booth to copy from, and he is further allowed to have an assistant, or two if he desires, on making the necessity therefor known to the inspectors of election. An inspection of all the so-called Australian ballot laws now in force in the several states will not disclose a more perfect system for the protection of the voter in his constitutional right to vote on an equality with every other voter, and to designate in secrecy his choice, than is found in the Wisconsin law.

Some discrimination between classes as to the manner of securing representation upon the ballot is unavoidable in any practicable system of voting by the use of official ballots; otherwise there would be no limit to its size and it would be so complicated and confusing as to certainly materially impair the freedom of the elective franchise. The exercise of that right would be liable to become so burdensome that many would not feel able to bear it, and others would not care to do so. As Chief Justice Paxson said, in *DeWalt v. Bartley*, 146 Pa. St. 529, without some limit to the right to be called a party and to be represented as such upon the official ballot, any number of persons, however small, might claim such right and to be a representative organization, as did the three tailors of Tooley street who are said to have held a meeting and petitioned the parliament of England for a redress of public grievances, styling themselves, "We, the people of England."

The qualification feature, as observed by other courts, is really the most serious objection to the law, yet we are not

The State ex rel. Runge vs. Anderson.

prepared to say that it passes the limit of reasonable regulation within the principles before stated. The right of the individual to vote for the candidate of his choice is not interfered with by it, and that is the constitutional right guaranteed. Mere party fealty and party sentiment, which influences men to desire to be known as members of a particular organization, are not the subjects of constitutional care. It deals with the individual right of the citizen to vote for the candidates of his choice, and if that be not impaired, and reasonable opportunity be furnished for equal representation on the official ballot under a party designation, no unjust discrimination can successfully be claimed. Men are supposed to stand for principles when placed in nomination by political parties, and when the candidates of one party are identical with those of another it is supposed, and not unreasonably, that for the time being at least, though there be two organizations there is but one platform of principles, and that one party designation on the official ballot will satisfy all legitimate requirements of both. The confusion and uncertainty that would arise in such a case from the double printing of names, furnishes a strong reason for prohibiting it, and that, with the other reasons mentioned, strongly support the wisdom of the prohibition as a proper legislative regulation.

Thus testing the law under consideration by all the constitutional limitations and guaranties suggested by appellant, and viewing it from a practical rather than a sentimental standpoint, we cannot pronounce it unconstitutional with that degree of certainty requisite to judicial condemnation. This conclusion is reached also having in view that our system of government, and natural justice as well, requires the exercise of the elective franchise to be as free, as simple, and as easy as can be consistently with the independent, honest, and intelligent individual action of the voter. If all men were pure in their relations to each other and the state,—

were not only able to, but would with certainty, correctly perform all the duties of citizenship,— very little of the great mass of statute laws which we possess would be of any practical use. But such is not the case. We must therefore deal with things as they are and as they must ever continue to be. We must appreciate the fact that without wise and careful legislative regulations, supplementing the constitutional guaranties, the elective franchise might be so abused, and the means of such corruption, as not only to nullify its controlling purpose, but every purpose of popular constitutional government. That extremists may carry such regulations too far is by no means improbable, but when they do it will be met by that other safeguard, the court, without which constitutional guaranties might easily be evaded and rendered useless by the ingenuity of legislatures.

*By the Court.*— The order of the circuit court is affirmed.

WINSLOW, J. I regard the provision of the election law which is attacked in this case as an unwarrantable interference with the freedom of election, and hence void. Its only purpose is to prevent fusion between two parties. This is plain to the most casual reader. That it will quite effectively accomplish this purpose seems equally plain; that it is a laudable, or even lawful, purpose, I deny. If one party has named a worthy ticket, there is no reason, in law or morals, why another should be debarred from indorsing that ticket except on pain of surrendering its existence. It is easy to say that the rights of the elector are not infringed; that he may still vote for the men of his choice, because their names are on the official ballot; and that the party designation makes no difference in the result. This argument is, in my opinion, unsatisfactory. Political rights are universally exercised through party organizations, and such organizations are recognized by this very law. When the law interferes with the freedom of action of the party, it necessarily interferes with the freedom of action of the citi-

State ex rel. Chicago & N. W. R. Co. vs. Oshkosh, A. & B. W. R. Co.

zens who compose that party. This law says to the party, and through the party to the electors composing it: "You shall not indorse candidates of any other party, except on condition that you surrender your existence as a party and lose your right of representation upon the official ballot in the future." Knowing, as we do, the strength of party ties, and the practical necessity of party organizations, it seems to me that this threat is neither necessary nor reasonable. It cannot be claimed that this provision is aimed at any evil practices or wrongful act. It will prevent no illegal vote from being cast, nor will it stop any corrupt practice, nor in any way preserve the purity of the ballot. There is, in my judgment, no reason, in good morals or in the principles of republican government, for any such device. It is well to surround the ballot with reasonable regulations, and to adopt all precautions that will prevent corruption and illegal voting; but it is not well to make the ballot difficult for the honest voter, nor to adopt devices which tend only to hinder the full exercise of political rights.