## HAYES et al. v. ROSS, County Clerk.

No. 2437.    Decided October 28, 1912 (127 Pac. 340).

1. ELECTIONS—NOMINATIONS BY GROUP. Laws 1911, chap. 126, sec. 825, provides that nominations of candidates may be made by a group of voters by a certificate of nomination, designating the name and emblem which the signers shall select, which certificate shall contain a statement that the names therein will not be printed upon the official ballot or any party ticket as the nominees of any particular party, and will not be printed upon the official ballot under the name or device adopted in the certificate, and requires the officers making up the official ballot to erase from the certificate any names of nominees contained therein that will otherwise appear printed upon the official ballot. Section 822 defines a convention as an organized assemblage of voters representing a party which cast at least two per cent. of the entire votes in the district at the last election, and forbids any number of voters or convention to nominate more than one group of candidates or more than one ticket by adopting any names other than the regular name or the party represented by the voters. Comp. Laws 1907, sec. 824, provides that certificates of nomination, with certain exceptions, shall be filed with the Secretary of State. Section 832 provides that the officer with whom the original certificate is filed shall finally pass upon the objections to the certificate. Section 829 provides that the Secretary of State immediately

upon the expiration of the time to file certificates of nomination shall certify to the county clerk the name and description of each candidate, with other details mentioned in the certificate of nomination. *Held*, that a group of voters nominating by certificate may have the names of such nominees placed on the official ballot under the political name and emblem designated in the certificate only when the names of the nominees do not elsewhere appear on the official ballot, so that candidates for district judge and district attorney whose names appeared on the official ballot under the name and emblem of the Democratic Party which at the last preceding election cast more than two per cent. of the entire vote of the district could not also compel the county clerk to place their names on the official ballot under the name and emblem of the Progressive Party, designated and selected by a group of voters in their certificate of nomination. (Page 582.)

2. ELECTIONS—BALLOTS—STATUTORY PROVISIONS. The legislature has power to provide that the name of a nominee or candidate for political office shall be placed but once on the official ballot, and provide the conditions under which the name of a nominee may appear more than once thereon.[1] (Page 586.)

3. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT. The legislative intent must govern in construing a statute, and it should be construed so as to effectuate such intent as ascertained by the language of the statute. (Page 588.)

Mandamus proceedings by H. H. Hayes and another against Ed. Ross, Clerk of Sevier County.

WRIT DENIED.

*C. S. Varian* for plaintiffs.

*A. E. Moreton* for defendant.

STRAUP, J.

We are asked by mandamus to compel the clerk of Sevier County to restore the names of certain alleged nominees stricken by him from a certificate of nomination, and to place them on the official ballot, under the name and emblem of a particular group of voters designating themselves as the Progressive Party, and to be furnished the electors at the general

---

[1] Payne v. Hodgson, 34 Utah, 282, 97 Pac. 132.

election to be held on November 5 ,1912.    The election laws drawn in question are parts of sections 822 and 825, chap. 126, Sess. Laws Utah, 1911.    Section 822, among other things, provides that nominations of candidates for public office may be made by any convention of delegates of a political party which presented candidates at the last· preceding election held for the purpose of making nominations for public office, and that a convention, as defined by the statute, "is an organized assemblage of voters or delegates representing a political party" which, at the last preceding election, cast at least two per cent. of the entire vote in a district or other political division."    It forbids "any number of voters, convention, or committee of any political party to nominate more than one group of candidates or have placed on the official ballot more than one group of candidates or more than one ticket, by adopting any name, emblem or device, other than the regular name, emblem and device of the political party represented by the voters, committee or convention making such nomination," but permits "any voters, convention or committee of any political party" to "nominate any one or more person or persons who may have been nominated by any other voters, convention or committee, but in making such nomination, the name of such nominee shall be placed upon the regular ticket of the political party represented by the voters, convention or committee making such nomination, and no political party shall be permitted to have placed upon the official ballot, either directly or indirectly, more than one ticket or more than one group of candidates, or to group the same persons on different tickets by the same party under a different name or emblem."    Section 825 provides for the nomination of candidates by a group of voters other than by a convention or committee.    It, among other things, provides that nominations may be made by such a group of voters by a certificate of nomination containing the names of the candidates for the offices to be filled and designating the political or other name which the signers shall select, and that the certificate shall be signed, in case of nominations for offices to be filled within a district greater

than a county, by at least 100 voters residing in the district
who are required to acknowledge their signatures, and to
add their places of residence, and to take oath that they are
voters within the district. It further provides that "such
certificate shall also contain a statement by the voters that
the name or names of the person or persons nominated in
the certificate will not be printed upon the official ballot, or
upon any party ticket as the nominees of any political party
or voters and that the name or names of the persons nomi-
nated in the certificate will not be printed upon the official
ballot under the name or device adopted in the certificate.
It is hereby made the duty of the officers making up the
official ballot to erase from the certificate any name or names
of nominees contained in such 'certificate that will other-
wise appear printed upon the official ballot as the party
ticket." By section 824, Comp. Laws Utah 1907, it is pro-
vided that certificates of nomination of candidates for offices
to be filled by the voters of any political division or district
greater than a county shall be filed with the Secretary of
State. Section 832 provides that all certificates of nomina-
tion which are in apparent conformity with the statute shall
be deemed valid, unless objection thereto shall be made in
writing within three days after the filing of the certificate.
In cash such objection is made, notice shall be given and
the officer with whom the original certificate was filed shall
pass upon the validity of the objection, and that his decision
shall be final; provided that the officer shall decide the objec-
tion within at least forty-eight hours after the objection is
filed. By section 829 it is provided that the Secretary of
State shall, immediately upon the expiration of the time
within which certificates of nomination may be filed with him
and corrections thereof made, certify to the county clerk of
each county within which any of the voters may by law
vote for the candidates named in the certificate the name and
description of each such candidate, together with the other
details mentioned in such certificate of nomination so filed
with the Secretary of State.

At the last preceding election, there was a political party known as the Democratic Party, which, in the Sixth Judicial District, comprising Sevier County and four other counties, cast more than two per cent. of the entire vote in that district, but there was no political party designated by the name of Progressive Party. On September 28, 1912, a group of voters of that district, who, in their certificate of nomination, designate themselves as the Progressive Party and their emblem as the head of a bull moose, under the provisions and in pursuance of section 825, nominated by such certificate of nomination H. H. Hayes for the office of district judge of that district and E. E. Hoffman for the office of district attorney, to be filled at the general election on November 5, 1912. It is alleged and admitted that the certificate was signed by such electors within the district, and was verified by them on September 28, and filed with the Secretary of State on October 4, 1912. It is further shown that the Democratic Party at a regular convention of delegates called to make nominations for the offices of district judge and district attorney on October 2, 1912, nominated Hayes for district judge and Hoffman for district attorney, and filed a certificate of such nominations with the Secretary of State on October 5, 1912, one day after the filing of the certificate of the group of voters. After the expiration of the time within which certificates of nominations may be filed, the Secretary of State in one certificate certified to the clerk of Sevier County the names of Hayes and Hoffman as nominees of the group of voters and Hayes and Hoffman as also the nominees of the Democratic Party, together, while not alleged, but as we may assume, with the "details mentioned in such certificates of nomination so filed with" him. The clerk in making up the official ballot to be furnished the electors at the general election placed the names of Hayes for district judge and Hoffman for district attorney on the official ballot under the name and emblem of the Democratic Party, but refused to place such names on the official ballot also under the name and emblem of the group of voters as designated and selected by them in their certificate of nom-

ination.  Hence Hayes and Hoffman seek by mandamus to compel the clerk to place their names also under the name and emblem of the Progressive Party as designated by the group of voters.

The determination of the question largely depends upon the meaning to be given the language of section 825, relating to the provision that, when nominations are made by a group of voters under the provisions of that section, such voters must state in their certificate of nomination that "the name or names of the person or persons nominated in the certificate will not be printed upon the official ballot or upon any party ticket as the nominees of any political party," etc., and to the provision requiring "the officers making up the official ballot to erase" from the certificate of such group of voters any name or names that will otherwise appear printed on the official ballot.  It will be observed that under section 822 the Democratic Party, casting more than two per cent. of the entire vote in the district at the last preceding election, had the right to nominate Hayes and Hoffman, and to have their names placed upon the official ballot under its party name and emblem, notwithstanding a group of voters had by a certificate of nomination also nominated Hayes and Hoffman.  Now, it, in effect, is argued that, since that is true, then the group of voters likewise ought to have the same right to have such names placed on the official ballot under their designated party name and emblem, especially since they made their nominations before the Democratic Party made its.  It substantially is conceded that, by giving the language of section 825 its ordinary and apparent or literal meaning, neither the petitioners nor such group of voters have such right; but it is argued that the language should be so construed as to confer such right upon them.

By the great weight of authority it was within the power of the legislature to declare that the name of the nominee or candidate shall be placed but once on the official ballot. The cases so holding are cited in *Payne v. Hodgson,* 34 Utah, 282, 97 Pac. 132.  So was it also within its power to declare under what circumstances or conditions the name of a nom-

inee or candidate may appear more than once on the official
ballot. That was done in section 822. The legisla-
ture saw fit to grant and to restrict that right to polit-      2
ical' parties making nominations by conventions or
committees. It withheld it from groups of voters making
nominations by certificate of nomination under section 825,
and conferred upon them the right to make a nomination
of a person or persons only when his or their names will not
appear otherwise on the official ballot. With the wisdom
of such a law we are not concerned. It is enough for us to
say that the legislature had the power to make such a dis-
tinction. And we perceive good reason for it. As already
observed, the object of the statute in giving a group of voters
the right to make nominations, and to have the name or
names of such nominee or nominees placed on the official
ballot, was to afford such voters an opportunity of placing
the names of candidates on the official ballot which other-
wise would not be on the ballot. Hence, the provision that
such voters in their certificate of nominations must state
that the name or names of the person or persons nominated
by them will not otherwise be on the official printed ballot,
and the further mandatory provision requiring the officers
making up the official ballot to erase from the certificate of
nomination of such group of voters any name or names con-
tained in it which "will otherwise appear printed on the
official ballot."

It, however, is argued that the statute made it the duty
of the Secretary of State, upon objections filed with him,
to pass upon them, and that, when he certified to the county
clerk the names and descriptions of the candidates, the clerk
had no discretion and no duty to perform, except to place
such names on the official ballot. But the statute requires
the Secretary of State also to certify to the county clerk
" the details mentioned in the certificate of nominations filed
with" him. And the statute in no uncertain language makes
it the duty, not of the Secretary of State, but of "the officers
making up the official ballot," here the county clerk, "to
erase from the certificate any name or names of nominees"

contained in the certificate of nominations made by a group of voters which "will otherwise appear printed upon the official ballot," etc. Hence the duty is imposed, not on the Secretary of State, but on the clerk, to determine what names may appear on the official ballot. We think it quite clear that the statute does not confer upon the Secretary of State the power to erase names from the nomination certificate. He is only authorized upon filed objections to pass upon the sufficiency and validity of certificates of nominations, and this he must do within the time specified in the statute. The certificates of nomination of candidates for public office may be and are filed at different times; and the Secretary may pass upon the sufficiency of one before another is filed. When he has adjudged the sufficiency of a particular certificate, his power is exhausted. He cannot afterwards erase any name or make or authorize any change to be made in the certificate. His authority extends only to direct a change in the form of the certificate or to permit a new one to be filed when the one filed fails to comply with the statute in such particular.

It, however, is suggested that such a holding leads to the conclusion that the county clerk of one county of a district might determine one set of names of nominees to be voted for by the electors of the district and a clerk of another county of the district, a different set of names. And, to avoid that, it is argued that the Secretary of State, and not the clerk, should determine what names shall appear on the official ballot to be furnished to the electors of a district. Such an argument might with propriety be addressed to the legislative body, but it is of no avail here. We have quite enough to do in ascertaining what the legislature has done without also legislating for it. Further, the result supposed is more fancied than real. The statute, while imposing the duty on the clerk to ascertain and determine the names of nominees to be printed on the official ballot, nevertheless does not give him any discretion in such particular, so that one clerk of a county in a district on a given state of facts might exercise his discretion one way and a clerk of another county on the same facts another way. The statute itself prescribes

the duty and the manner of its exercise. And, if each clerk obeys the law as he is required and as he may be compelled to do, the actions of the clerks of the different counties of a district will be harmonious and not discordant.

Much is said on the question that the language referred to in section 825 is unintelligible. It is stated by the plaintiffs in their brief that the section "is filled with typographical and verbal errors." Just what is meant by this is not clear. No such errors appear on the face of the statute "published by authority," nor is it shown or claimed that the published statute is in any particular different from the original act as filed with the Secretary of State. The validity of the statute is not questioned. It is claimed that it is unintelligible; but it is not urged that it for that or any other reason is void or unenforceable or that it cannot be given effect. To the contrary, it is urged that it be given effect, not in accordance with the ordinary and apparent or literal meaning of the language employed, but that it, in connection with all other provisions of the general election laws, be so construed as to accomplish a particular desired purpose or object. To give the statute the meaning contended for requires us to eliminate words from the statute and to substitute others in their place, to strike from the statute the phrase "the officers making up the official ballot," and to substitute in place of it the words "the Secretary of State," and in other particulars to either strike words and to substitute others or to ignore them and read something into the statute not found there, and to take a specific duty from a particular officer imposed upon him by the statute and to confer it upon another.

Certainty, as is urged by the petitioners, the legislative intent must govern, and that the statute should be so construed as to give effect to that intent. But such intent is to be ascertained by the language employed by the legislature, and not by a process of a general elimination and substitution of words and phrases. And when the language is looked at as it is, and is considered in connection with all other provisions of the election laws bearing upon

the subject in hand, it is reasonably clear that the legislature intended that different political parties, which, at the last preceding election, cast at least two per cent. of the entire vote in a district or other political division, might, by convention or committee, each make nominations of the same person or persons and entitled to have his or their names placed on the official ballot under the name and emblem of each such political party, but that a group of voters making nominations under the provisions of section 825 by a certificate of nominations had the right to have the name or names of such nominees placed on the official ballot under the political name and emblem designated by such group of voters only when the name or names of their nominees will not otherwise appear on the official printed ballot. We think the statute does not permit of any other construction; and it is just as clear that the duty of placing or refusing to place on the official ballot the names of the nominees of such group of voters is imposed on the clerk, who, under the statute, is "the officer making up the official ballot," and not on the Secretary of State.

We therefore are of the opinion that it is the duty of the clerk not to place the name of either Hayes or Hoffman on the official printed ballot under the political name and emblem of the group of voters who designated themselves the Progressive Party and their emblem the head of a bull moose.

The writ is denied.

FRICK, C. J., and McCARTY, J., concur.