(October 15, 1924.)

STATE ex rel. PERRY W. MITCHELL, Plaintiff, v. J. A. DUNBAR, as County Auditor of Canyon County, Idaho, Defendant.

[230 Pac. 33.]

ELECTIONS—STATUTORY CONSTRUCTION—STATUTES IN PARI MATERIA—
NEGATIVE STATUTE—CANDIDATE NOMINATED BY MORE THAN ONE
PARTY—HOW NAMED ON BALLOT—DECLINATION OF NOMINATION—
ACTION BY AUDITOR—CONSTITUTIONAL LAW—VALIDITY OF C. S.,
SEC. 573—RIGHTS OF PARTY—RIGHTS OF ELECTOR—RIGHTS OF
NOMINEE.

1. The provision of C. S., sec. 573, that no name shall appear on the ballot more than once applies to a case where one desires to have his name on more than one ticket as the candidate of several parties for a political office.

2. Statutes *in pari materia* should be construed together and reconciled, if possible.

3. It is a general, though not an inflexible rule, that a negative or prohibitory statute is mandatory.

4. An objection to the validity of the provision of C. S., sec. 573, that no name shall appear on the ballot more than once on the ground that it is uncertain, indefinite and uninforceable, is not well taken.

5. The provision of C. S., sec. 553, for declination of nominations furnishes a means of determining on which ticket the candidate's name shall appear on the ballot where he has been nominated by more than one party.

6. If a candidate is nominated by more than one party and declines none of the nominations, his name may be placed by the county auditor upon the ballot on the ticket of any one of the parties that has nominated him, but on only one.

7. If a candidate nominated by more than one party does not exercise his right to decline, but, before the ballots are printed, makes a request of the auditor that his name appear on a certain ticket, the statute does not prohibit the auditor from complying with this request.

Publisher's Note.

2. Construction of contemporaneous statutes *in pari materia*, see notes in 18 Ann. Cas. 424; Ann. Cas. 1915A, 186.

8. A court should not hold a statute unconstitutional unless its repugnance to the constitution appears beyond all reasonable doubt.

9. The provision of C. S., sec. 573, that no name shall appear on the ballot more than once is not unconstitutional.

Original proceeding in *mandamus*. Demurrer to application sustained. Alternative writ quashed. *Action dismissed*.

James P. Pope, Henry Z. Johnson and Wm. M. Morgan, for Plaintiff.

It is the imperative duty of the county auditor to publish and print the name of every candidate as certified to him by the Secretary of State. (C. S., secs. 551, 572, 3631.)

That portion of section 573, C. S., providing that "No name shall appear thereon [on ballot] more than once" is unconstitutional and void. (*Murphy v. Curry*, 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97; *Hopper v. Britt*, 203 N. Y. 144, Ann. Cas. 1913B, 172, 96 N. E. 371, 37 L. R. A., N. S., 825.)

Such portion of section 573 is incomplete and inoperative, as no means is provided for its execution. (2 Lewis' Sutherland, Stat. Construction, sec. 388; *Holmberg v. Jones*, 7 Ida. 752, 760, 761, 65 Pac. 563; *State v. Kingsley*, 35 Ida. 262, 205 Pac. 892.)

The same person may be the candidate of more than one political party in Idaho. (*Donovan v. Dougherty*, 31 Ida. 622, 628, 174 Pac. 701.)

Logan D. Hyslop, Pros. Atty., and A. H. Conner, Attorney General, for Defendant.

The right of suffrage is not a natural right, but may be granted, or withheld, or given subject to such restrictions as the sovereign may deem most conducive to the public welfare. (*Innis v. Bolton*, 2 Ida. 442, 17 Pac. 264; *Shepherd v. Grimmett*, 3 Ida. 403, 31 Pac. 793; *Wiggin v. Lewiston*, 8 Ida. 527, 69 Pac. 286; *Blair v. Ridgely*, 41 Mo. 63, 97 Am. Dec. 248, and note; *Adams v. Lansdon*, 18 Ida. 483, 110 Pac. 280; 20 C. J. 60; *State v. Superior Court*, 60

Wash. 370, 140 Am. St. 925, 111 Pac. 233; *Gardner v. Ray,* 154 Ky. 409, 157 S. W. 1147.)

The provision in the statute that the name of a candidate may appear on the ballot but once, such as is found in C. S., sec. 573, is constitutional. (Idaho Const., art. 6, sec. 4; *State v. Superior Court,* 60 Wash. 370, 140 Am. St. 925, 111 Pac. 233; *Todd v. Election Commrs.,* 104 Mich. 474, 62 N. W. 564, 64 N. W. 496, 29 L. R. A. 330; *State v. Coburn,* 260 Mo. 177, 168 S. W. 956; *State v. Wileman,* 50 Mont. 436, 143 Pac. 565; *State v. Porter,* 13 N. D. 406, 3 Ann. Cas. 794, and note, 100 N. W. 1080, 67 L. R. A. 473; *State v. Bode,* 55 Ohio, 224, 60 Am. St. 696, 45 N. E. 195, 34 L. R. A. 498; *Hayes v. Ross,* 41 Utah, 580, 127 Pac. 340; *State v. Anderson,* 100 Wis. 523, 76 N. W. 482; *People v. Czarnecki,* 256 Ill. 320, 100 N. E. 283, 107 N. E. 625; 20 C. J. 148.)

The repeal of a statute by implication is not favored by the courts. (*Innis v. Bolton,* 2 Ida. 442, 17 Pac. 264.)

Even if a strained construction of certain words in C. S., secs. 536, 542 and 551, could be taken to mean that the name of a candidate could be printed in the column of each party nominating him, such sections would not repeal by implication the positive prohibition contained in sec. 573. Almost identical sections were held not to repeal similar provisions in the following cases: *State v. Wileman,* 50 Mont. 436, 143 Pac. 565; *People v. Czarnecki, supra; State v. Superior Court, supra.*

At least one other state has provided no method by which the officer shall determine the column in which the name of a candidate shall be placed. (*State v. Coburn, supra.*)

This case cannot be confused with other cases where there is an uncertainty as to the duty to be performed. In this case the duty is specific, but is left to the discretion of the officer as to how it shall be performed. Discretionary powers are a large element of the law of administration, and county officers have by implication such powers as are necessary to perform the duties enjoined on them. (15 C. J. 510; Lewis' Sutherland, Statutory Construction, 2d ed., p. 1046; Throop,

Public Officers, sec. 542; Wyman's Administrative Law, sec. 36; *Woods v. State,* 44 Neb. 430, 63 N. W. 23.)

The duty of an auditor to prepare the official ballot is ministerial. (*Miller v. Davenport,* 8 Ida. 593, 70 Pac. 610; *Fuller v. Corey,* 18 Ida. 558, 110 Pac. 1035.)

McCARTHY, C. J.—This is an original proceeding in *mandamus.* Plaintiff was nominated for representative in Congress by the state conventions of both the Democratic and Progressive parties, certificates of nomination being duly filed with the Secretary of State by the chairman and secretaries of said conventions. Plaintiff alleges that he accepted both nominations, and the Secretary of State certified them to defendant, Auditor of Canyon county, whose duty it is to provide printed ballots for use at the election in said county. Plaintiff demanded of defendant that he cause plaintiff's name to be printed upon the official ballot as candidate for representative in Congress on the Democratic ticket and also on the Progressive ticket, which defendant has refused to do. Plaintiff asks the mandate of this court to compel such action on the part of defendant. Defendant demurs to the application for the writ and moves to quash the alternative writ heretofore issued on the ground that the application, setting forth substantially the facts above stated, does not state facts sufficient to constitute a cause of action nor entitle plaintiff to the writ.

The decision of this case requires a consideration and construction of the following provisions of our statutes. C. S., sec. 573, provides, *inter alia:*

"Every ballot shall contain thereon the names of every candidate whose nomination for any office specified on the ballot has been certified or filed according to the provisions of this title, but no name shall appear thereon more than once."

This provision has been contained in our statutes since it was first enacted at the Seventh Session in 1903. It has never been expressly amended or changed. In 1909, in an act relating to the nomination of candidates for political

parties at a primary election the following provision was enacted:

"In case a person is nominated upon more than one ticket, he shall file with the proper officer a written declaration indicating the party designation under which his name is to be placed on the official ballot." (Sess. Laws 1909, H. B. No. 16, p. 207, sec. 31.)

In 1917 the general provisions of the statutes in regard to the preparation of election ballots were amended by the insertion of the following provision:

"If a candidate shall receive the nomination of more than one party or more than one political designation for the same office, he may, at any time, not less than thirty-five (35) days prior to the date of the general election, by a writing delivered to the Secretary of State, if the nomination is for a state office, or to the county auditor, if the nomination is for a county office, direct in what order the several political designations shall be added to his name upon the official ballot, and such directions shall be followed by said officer. If, during the said time, the said candidate shall neglect to direct in writing as aforesaid, then said officer shall add said political designations to the name of said candidate in such order as said officer shall see fit." (Sess. Laws 1917, chap. 93, p. 319.)

By sec. 31 of chap. 27 of the Political Code of the Comp. Laws the above provision of the 1909 Session Laws was re-enacted. In 1919, in an act relating to the nomination of candidates for political offices, sec. 31 of chap. 27 of Political Code of the Compiled Laws was expressly repealed. (Sess. Laws 1919, chap. 107, sec. 46, p. 390.) This act was approved March 3, 1919. However, by a later act of that session, to wit, chap. 169, approved March 14, 1919, the provision of the 1903 law to the effect that no name shall appear on an election ballot more than once was expressly re-enacted. It is now C. S., sec. 573. In chap. 107 of the 1919 Session Laws the following provision in regard to declination of a nomination was re-enacted:

"Sec. 38. Decline Nominations. Whenever any person nominated for a public office shall in writing signed by him and by him acknowledged before a proper officer or attested by the signature of two competent witnesses, and filed in the office in which the certificate of his nomination was filed, state that he declines the nomination, such nomination shall thereafter be of no effect. In nominations relating to presidential electors, congressional, state and district officers, declinations must be filed not less than twenty days before the election and in nominations relating to legislative, county, precinct and municipal officers such declinations must be filed not less than ten days before the election." (Sess. Laws 1919, chap. 107, sec. 38, p. 387. This is now C. S., sec. 553.)

Sec. 27 of Sess. Laws of 1919, chap. 107, p. 382, provides:

"Sec. 27. Nominees of State Convention—Certified. The persons nominated shall be the duly accredited candidates of their respective parties for the several offices and their names shall be printed in the proper party column, and under the appropriate heading on the official ballot for the ensuing general election. Within five days after the adjournment of a state convention there shall be filed with the Secretary of State a copy of the platform adopted thereat, certified to by the chairman and secretary of the convention, and a certificate signed by said officers, showing the names, postoffice addresses and business occupations of the candidates nominated."

This is now C. S., sec. 542. Sec. 36 of 1919 Sess. Laws, chapter 107, being now C. S., sec. 551, provides as follows:

"Not less than 30 days before an election the secretary of state shall certify to the several county auditors the names, places of residence, and business occupations of all persons nominated to be voted for at the election as shown by certificates, the nomination papers filed in his office, with the necessary information relating to such nominations as will enable the county auditors to properly prepare the ballots. . . . . "

C. S., sec. 572, provides:

"Except as in this title otherwise provided, it shall be the duty of the county auditor of each county to provide printed ballots for every election for public officers in which electors, or any of the electors, within the county, participate, and cause to be printed in the ballot the name of every candidate whose name has been certified to or filed with the county auditor in the manner provided for in this title. . . . . "

Petitioner contends that the words "No name shall appear thereon more than once," found in C. S., sec. 573, mean simply that no person shall be a candidate for more than one office. This construction does violence to the language used. There is nothing in the language, the context, or the circumstances which lends color to the idea that such was the intention of the legislature. The language covers just such a case as the present, where one desires to have his name on more than one ticket on the same ballot.

Petitioner next contends that under C. S., secs. 542, 551, and 572, it is the imperative duty of the county auditor to print the name of every candidate as certified to him by the Secretary of State, and it is the right of a candidate to have his name printed on the ticket of every party which has nominated him. It will be noticed that C. S., sections 542 and 551, were passed by the same legislature, being respectively secs. 27 and 36 of chap. 107, Sess. Laws 1919. Sec. 572 is an older law, having come down through various re-enactments from its original enactment in the session laws of 1891. It will also be noticed that the legislature in 1919 by a later enactment re-enacted the provision of C. S., sec. 573, about which this controversy centers, to wit:

"Every ballot shall contain thereon the names of every candidate whose nomination for any office specified on the ballot has been certified or filed according to the provisions of this title, but no name shall appear thereon more than once." (Chap. 169, Sess. Laws 1919, p. 540.)

Secs. 542, 551 and 573 were thus re-enacted by the same session of the legislature and are *in pari materia*. They

should be construed together and reconciled if possible. We think this may be done. It is clearly the legislative intent that the general provision forbidding the name on the ballot more than once shall be considered a general proviso, applying in all cases and limiting the application of the other provisions which, standing by themselves, would have the effect of causing a name to appear on the ballot more than once. This conclusion is reinforced by the fact that this general provision was re-enacted in 1919 subsequently to the enactment of the other sections.

Petitioner next contends that the above provision of C. S., sec. 573, is incomplete and inoperative as no means are provided for its execution. In connection with this argument it will be noticed that the statute is negative or prohibitory in form. It is a general, though not an inflexible, rule, that a negative or prohibitory statute is mandatory. (*Bladen v. Philadelphia,* 60 Pa. St. 464; *State v. Thompson,* 21 N. D. 426, 131 N. W. 231; *Fitzmaurice v. Willis,* 20 N. D. 372, 127 N. W. 95; *In re McQuiston's Adoption,* 238 Pa. St. 304, 86 Atl. 205; 2 Lewis' Sutherland, Stat. Const., 2d ed., secs. 611, 627, 633; Black on Interpretation of Laws, 2d ed., sec. 152.) There is certainly nothing indefinite or uncertain about the language that "no name shall appear thereon more than once." Nor does it need machinery for its enforcement and execution. All that the officer need do to comply with the statute is to refrain from doing the thing prohibited. In this connection petitioner relies upon several decisions of this court. The first is *Holmberg v. Jones,* 7 Ida. 752, 65 Pac. 563. The holding of the court is well summed up in the first paragraph of the syllabus as follows:

"A county cannot be created by implication and intendment merely, and a statute passed apparently for the purpose of creating a county is invalid for that purpose when it fails to declare in express language the creation of such proposed county."

The legislature expressed the intention to create the county, but the pretended statute contained no words of enactment creating it. The court holds that it cannot by

judicial construction supply the substance of a statutory enactment. The principle of that decision is not applicable in the present case because the words of enactment or the real substance of the statute are not lacking. Petitioner next relies upon a decision of this court in *State v. Kingsley*, 35 Ida. 262, 205 Pac. 892. In that case the court was asked to issue its writ of mandate commanding the trustees of a school district to deduct a certain amount from the salary of each teacher to be covered into the teachers' retirement fund. One section of the act declared it to be the duty of each clerk of a school district to collect such sum from each of the teachers yearly, to be placed in such fund. The law did not make it the duty of the teachers to pay, and did not expressly empower the clerk to enforce collection, nor the trustees to make any deduction from the salaries. The only penalty provided by the act for failure to pay was that it rendered a teacher ineligible to participate in the fund. It was urged that the provision of the act which made it the duty of the clerk to collect the money necessarily implied a duty on the part of the teachers to pay, a power on the part of the clerk to enforce collection, and on the part of the trustees to hold out the money. Construing the act as a whole, and particularly in view of the nature of the only penalty provided, the court concluded that the legislature did not intend to make payment compulsory. The principle of this decision does not seem applicable to a statute like the one under consideration where the legislature has named a certain act and prohibited it. Finally, petitioner relies upon the decision in *Ingard v. Barker*, 27 Ida. 124, 147 Pac. 293, in which this court held that it had no right to make judicial amendments to the statute in question by adding words thereto. The act made it the duty of the Governor to consider recommendations by the State Horticultural Association in appointing members of the board of horticultural inspectors. The court refused to interpolate into the statute words which would make it the legal duty of the Governor to follow such recommendations. The principle of that case is not applicable to the present

case. Here the statute expressly forbids the doing of a certain act. To give effect to the prohibition it is not necessary for the court to read anything into the act. Finally, petitioner relies upon language used in *Re Segregation of School Dist. No. 58,* 34 Ida. 222, 200 Pac. 138, in which this court said:

"However, the intent must be expressed by the words used and 'A legislative intention not expressed in some appropriate manner has no legal existence.'"

The words last quoted being from 2 Lewis' Sutherland, Stat. Const., 2d ed., sec. 388. In the present case the intent of the legislature to prohibit the act mentioned is clearly expressed. The court is asked to ignore the express prohibition of a statute and to order an officer to do a thing which the law forbids him to do.

Pursuing this thought further, however, petitioner points out that there is no express statutory provision which makes it the candidate's duty to elect on which ticket his name shall appear, or which expressly confers upon him the right to do so. There is no statute which directs how the auditor shall determine the matter. Thus, says petitioner, we are confronted by a dilemma in which the statutes prohibit the appearance of the name more than once on the ballot and yet fail to provide a method of determining on which ticket the name shall appear. For this reason he contends that the law is so uncertain and unworkable as to be void. It will be noted, however, that the alleged uncertainty does not inhere in the prohibitory provision of the statute which we are considering. It arises rather from the situation resulting from an enforcement of that prohibition. The auditor will have no difficulty in obeying the prohibition of the statute and refusing to place petitioner's name on more than one ticket. The question is: What shall he do?

C. S., sec. 553, expressly gives the candidate a right to decline any or all nominations. If he exercises this right by declining all but one of the nominations, it solves the problem and determines on which ticket his name shall be placed on the ballot. He is not compelled by statute to

exercise this right. However, if he does not do so, the auditor may place his name on the ticket of any one of the parties which has nominated him. Thus the statute does provide a method for determining how the candidate's name shall be placed on the ballot. Whether a better or more adequate method could have been, or should have been provided, is not for the court to determine or even to consider. In the light of the above facts we have no right to hold that the provision of the statute in question is absolutely unenforceable and therefore void. As a court we are concerned only with the provisions of the statute as we find them. However, we think it proper to suggest that, if a candidate is nominated by more than one party and does not exercise his statutory right to decline, but, before the ballots are printed, makes a request of the auditor that his name appear on a certain ticket, the statute does not prohibit the latter's complying with the request.

Having held against petitioner on his first point that the law is unworkable, we must pass upon his second point which is that the statute is generally unconstitutional. We must bear in mind the general rule recognized by all courts and expressed by this court in *State v. Omaechevviaria,* 27 Ida. 797, 152 Pac. 280, as follows:

"Courts approach constitutional questions with great deliberation, exercising their power in this respect with the greatest possible caution and even reluctance, and should never declare a statute void unless its invalidity is, in their judgment, beyond a reasonable doubt."

We must also bear in mind that our legislature has been expressly invested with broad powers and wide discretion in the matter of legislating in regard to the exercise of the right of suffrage by Const., VI, 4, which reads as follows:

"The legislature may prescribe qualifications, limitations, and conditions for the right of suffrage additional to those prescribed in this article, but shall never annul any of the provisions in this article contained."

Petitioner has not pointed us to any express provision of our constitution which is violated by the law in question.

Laws providing that a name may not appear on the ballot more than once have been held unconstitutional by the courts of two states, California and New York. Similar laws have been held constitutional by the courts of last resort of Washington, Montana, Michigan, Illinois, Wisconsin, Ohio, Missouri and Utah. The California case is *Murphy v. Curry*, 137 Cal. 479, 70 Pac. 461, 59 L. R. A. 97, holding that such a law is an invasion of the constitutional rights of the political party and the nominee. The majority of the court holds that it is an unjust discrimination against any party to say that the name of one of its nominees cannot appear upon its ticket on the ballot simply because he has also been nominated by some other party. To this is added the argument that an unjust discrimination also arises from the fact that the ballot conveys the false impression that the party has made no nomination for the office. The court also holds that the nominee has a constitutional right to have his name appear upon the ticket of every party that has nominated him. The argument that such a law invades the constitutional right of a political party is met by the supreme court of Washington in the following language:

"Recurring again to fundamental principles, the whole argument in this behalf is met by the undisputed proposition that the Constitution takes no concern of political parties. The people in adopting the constitutions, both state and federal, wisely considered that political parties are evanescent things, born of political emotions and of uncertain—sometimes precarious—tenure of life, and went no further than to protect the elector in his right to cast a ballot; not a coerced party ballot, but for the candidate of his choice, whether he be upon one ballot or another." (*State v. Superior Court*, 60 Wash. 370, 140 Am. St. 925, 111 Pac. 233, at 238.)

It is also met by the supreme court of Montana in the following language: "Our bill of rights applies to individuals, not to political parties." (*State v. Wileman*, 50 Mont. 436, 143 Pac. 565, at 566.) The existence and rights of political parties are not recognized nor guaranteed by either

the federal or the state constitutions. In the course of time legislatures found it necessary to recognize them for the purpose of regulating them and preventing or curbing certain pernicious customs and practices which had grown up. The rights of individuals to meet together as political parties and to express their views and carry on their propaganda as such are undoubtedly protected by the constitutional guaranties of freedom of assembly and of speech. But, so far as the ballot is concerned, political parties have no constitutional rights. The legislature might prohibit any mention or designation of party on the ballot. It cannot be reasonably contended that this law is repugnant to the constitution because it invades the rights of any party. This is particularly true in view of the sweeping power over elections expressly conferred by our constitution upon the legislature. It will be noted that the law is not aimed at any party. It operates evenly upon all.

The other decision holding such a law unconstitutional is in a New York case: *Hopper v. Britt,* 203 N. Y. 144, Ann. Cas. 1913B, 172, 96 N. E. 371, 37 L. R. A., N. S., 825. This decision proceeds upon the ground that such a law invades the constitutional right of the electors. An excellent and fair analysis of it is given by the supreme court of Montana in the following language:

"It was held that the anti-fusion statute discriminated in favor of the man who desired to vote a straight ticket and whose ticket was complete as against the man who desired to vote a straight ticket and whose ticket was not complete on the ballot and who must therefore make two or more marks to express his will. The gist of the opinion is compressed in a single sentence:

"'While the Constitution does not guarantee that the elector shall be allowed to express his vote by a single mark, our position is that he is guaranteed the right to express his will by a single mark if other voters are given the right to express theirs by a single mark and there is no difficulty in according the right to all.'"

See *State v. Wileman, supra.* The reasoning of the New York court does not appeal to us as sound. It is answered by the supreme court of Michigan in a decision upholding the validity of such a law. The court says:

"Does it [meaning such a law] destroy the full, free, and intelligent exercise of that precious right which is essential to the perpetuity of our government? To so hold would be absurd, and further argument cannot make it clearer. To what extent is the voter impeded? If he belongs to the Democratic or Prohibition or People's party, and desires to vote for a congressional candidate, he is required to make two crosses or marks instead of one. If he cannot read, he is certainly not impeded, because the parties sworn to assist him in preparing his ballot will readily inform him upon the subject, and mark it according to his wishes. It would be much more difficult to prepare a ballot under the pure Australian system, where each name must be marked. It would be a serious reflection upon the intelligence of the voters of Michigan to hold that they could be deceived by such a ballot or impeded in the right to vote. Especially is this true in view of the means of disseminating intelligence through the newspapers, upon the hustings, by printed posters, and the importunities of candidates and their friends." (*Todd v. Election Commrs.*, 104 Mich. 474, 62 N. W. 564, 64 N. W. 496, 29 L. R. A. 330.)

The New York court's argument is also answered by the following language of the supreme court of Wisconsin:

"The right of the individual to vote for the candidate of his choice is not interfered with by it, and that is the constitutional right guaranteed." (*State v. Anderson*, 100 Wis. 523, 76 N. W. 482, at 486.)

The argument that the provision in question invades constitutional rights of either the electors or the nominee is answered by the supreme court of Illinois as follows:

"The object of the Ballot Law is to afford to every legal voter the equal right with every other legal voter to cast his ballot freely for the candidates of his choice. It gives every candidate the same opportunity to have his name upon

the ballot once, in the column of the party of his choice.
Every voter has an opportunity to vote for him. Neither
the candidate nor the voter has a constitutional right to
demand more." (*People v. Czarnecki*, 256 Ill. 320, 100
N. E. 283, 107 N. E. 625.)

In the same decision the court well defines the purpose of
the official ballot as follows:

"The object of the official ballot is not to furnish voters
with information as to the persons who are the candidates
of their respective parties, or of any party, but to enable
them readily to indicate, in the prescribed form the candi-
dates of their individual choice."

For other well-considered decisions upholding the constitu-
tionality of such a law against the argument that it invades
the constitutional rights of the party, the candidate or the
elector, see *State v. Bode*, 55 Ohio St. 224, 60 Am. St. 696, 45
N. E. 195, 34 L. R. A. 498; *State v. Coburn*, 260 Mo. 177,
168 S. W. 956; *Hayes v. Ross*, 41 Utah, 580, 127 Pac. 340.

Under our constitutional provisions the legislature has
power to pass a law which bears a reasonable relation to
the purpose or object of regulating and conducting elections
so as to insure the public welfare. It is known to all that
there are two schools of political thought, one of which
lays stress upon the necessity and importance of parties
and party integrity, in order that political contests may be
conducted and decided in accordance with political princi-
ples and not become a mere scramble for personal prefer-
ment, the other of which minimizes, if it does not deny,
the necessity and importance of parties and party integrity,
and emphasizes the importance of voting for the individual
—the man's the thing. Such questions of political phil-
osophy and policy are for the legislature to consider and
determine, not for the courts. If one of the purposes of
this statute be to preserve party integrity, we conclude that
it is within the power of the legislature to adopt reasonable
measures to do this, so long as the law operates as the
present one, evenly and impartially upon all parties. Peti-
tioner has not pointed us to any provision of our constitu-

tion which the statute clearly infringes, nor to any implication necessarily and reasonably arising from the constitution with which it conflicts. We hold the law to be constitutional.

Defendant's demurrer to plaintiff's application is sustained, the motion to quash the alternative writ is granted, and the action is dismissed, with costs to defendant.

William A. Lee, J., and Babcock, District Judge, concur.

Budge and Wm. E. Lee, J., deeming themselves disqualified, did not sit at the hearing nor participate in the decision.

DUNN, J.—I concur in the judgment sustaining the demurrer, granting the motion and dismissing the action. I am of the opinion, however, that, in addition to the right to decline a nomination expressly granted by the statutes, a candidate has an implied right to dictate to the auditor on which ticket his name shall appear, without declining the nomination, such right to be exercised at any time before the ballots are printed. If the candidate neither declines the nomination nor elects upon which ticket his name shall be placed the auditor, having no right to elect, should omit the candidate's name from each ticket.