THE PEOPLE *ex rel.* Elmer J. Schnackenberg, Petitioner, *vs.* ANTONY CZARNECKI *et al.* Respondents.

*Opinion filed December 17, 1912.*

1. ELECTIONS—*name of a candidate cannot appear on different tickets on same ballot.* Section 8 of the Ballot law, as amended in 1903, prohibits the name of a candidate from appearing upon the ballot under the name of more than one party or group of petitioners for the same office.

2. SAME—*Primary Election law did not repeal section 8 of the Ballot law.* Sections 58 and 59 of the Primary Election law of 1910 did not repeal, by implication, the provisions of section 8 of the Ballot law, prohibiting the name of a candidate from appearing upon the ballot under the name of more than one party or group of petitioners.

3. SAME—*provisions of section 8 of Ballot law do not violate constitutional rights of candidates or voters.* The provisions of section 8 of the Ballot law which prohibit the name of a candidate from appearing upon more than one ticket on the ballot for the same office do not violate the constitutional rights of candidates or voters, as such provisions give each candidate the same opportunity to have his name upon the ballot once on the ticket of the party of his choice, and give every voter an opportunity to vote for him, and neither the candidate nor the voter has a constitutional right to demand more.

4. SAME—*provisions of section 8 of Ballot law do not constitute an arbitrary discrimination.* The provisions of section 8 of the Ballot law prohibiting the name of a candidate from appearing more than once on the ballot for the same office do not constitute an unconstitutional and arbitrary discrimination between political parties and between the voters of the different parties.

5. SAME—*elections are subject to legislative control within the constitutional limitations.* While the constitution requires all elections to be free and equal and all votes to be by ballot, yet the legislature may prescribe the form of the ballot and provide for its custody and distribution, and may provide the method of conducting elections, and adopt such practicable regulations as will secure a full and fair expression of the will of the voters.

6. SAME—*all reasonable and appropriate regulations concerning elections are constitutional.* All regulations which tend to secure the integrity, secrecy and fairness of the ballot interfere to some extent with the convenience of the voter, but so long as they

are reasonable and appropriate to the end sought and bear equally upon the voters they are constitutional.

7. SAME—*object of the official ballot.*  The object of the official ballot is not to furnish the voters with information regarding the persons who are candidates of their respective parties or of any party, but to enable the voters readily to indicate, in the prescribed form, the candidates of their individual choice.

ORIGINAL petition for *mandamus.*

DONALD R. RICHBERG, and EDWARD B. BURLING, for petitioner.

CHARLES H. MITCHELL, (EDGAR L. MASTERS, of counsel,) for respondents.

Per CURIAM: A petition was filed with the city clerk of the city of Chicago nominating a candidate for chief justice of the municipal court of Chicago and candidates for associate judge of that court, together with candidates for other offices, and designating the party in whose behalf such nominations were made as the "Progressive Party (for Social Justice.)" The candidate for chief justice of the municipal court and several of the candidates for associate judge had been previously nominated for those offices by the republican party at the primary election held on April 9, 1912. The board of election commissioners of the city of Chicago having charge of the printing of the ballots for the election of November 5, 1912, decided that the law prohibited the placing of a candidate's name in two or more columns on the ballot, and therefore refused to print the names of the candidates for chief justice and associate judge of the municipal court so nominated by petition, as well as by the republican party at a primary election, in the column with the other candidates so nominated by petition and also in the column with the other republican candidates. Thereupon the relator, who was a signer of the nominating petition, having obtained leave

of the court, filed a petition in this court for a writ of *mandamus* against the board of election commissioners, commanding them to cause the names of the candidates for chief justice and associate judge of the municipal court of Chicago so nominated by petition on behalf of the progressive party (for social justice,) and also nominated by the republican party, to be printed on the ballots in the column with the names of the other candidates of the progressive party (for social justice.) The cause was submitted upon demurrer to the petition and upon oral and printed arguments on behalf of both parties.

Counsel for the relator argue that the provisions of the Ballot law which the respondents regarded as prohibiting them from printing the name of a candidate in two places on the ballot did not do so, for the reasons that they have been repealed, by implication, by the Primary Election act, and that they are in violation of the constitutional provision that "all elections shall be free and equal."

The Ballot law, which provides for the printing and distribution of ballots at public expense, was adopted in 1891. It contained no provision prohibiting the printing of names of candidates in more than one place on the ballot for the same office, except the provision in section 5 that the name of any candidate whose name might appear in any other place on the ballot should not be added by petition for the same office. Section 8 provided that anyone whose name had been presented as a candidate might withdraw from the nomination by filing with the Secretary of State his request in writing, signed and acknowledged before an officer authorized to take acknowledgments of deeds. In 1897, and in 1903, section 8 was amended, so that it now reads as follows:

"Any person whose name has been presented as a candidate or who has been nominated by more than one convention, caucus or meeting of qualified voters, may cause his name to be withdrawn from any such nomination by

his request in writing, signed by him and duly acknowl-
edged before an officer qualified to take acknowledgment
of deeds, and filed with the Secretary of State not less
than twenty-five (25) days, or with the proper clerk not
less than thirteen (13) days previous to the day of elec-
tion, and no name so withdrawn shall be printed upon
the ballots under the party appellation or title from which
the candidate has withdrawn his name. In case the cer-
tificate of nomination or petition as provided for in this
act shall contain or exhibit the name of any candidate for
any office upon more than one of said certificates or peti-
tions (for the same office), then and in that case the Sec-
retary of State or county clerk, as the case may be, shall
immediately notify said candidate of said fact and that his
name appears unlawfully upon more than one of said cer-
tificates or petitions, and that within three (3) days from
the receipt of said notification, said candidate must elect
as to which of said political party appellations or groups
he desires his name to appear and remain under upon said
ballot, and if said candidate refuses, fails or neglects to
comply with the provisions herein, then and in that case
the Secretary of State or county clerk, as the case may be,
shall not permit the name of said candidate to appear or
be printed or placed upon said ballot under any or either
of said political party appellations or groups. All certifi-
cates of nomination and nomination papers when filed shall
be open, and under proper regulation, to public inspection,
and the Secretary of State and the several clerks having
charge of nomination papers shall preserve the same in
their respective offices not less than six months."

However defective the language of this section may be
in the expression of the legislative intention, it manifestly
was designed to prevent the name of a candidate from
appearing upon the ballot under the name of more than
one party or group of petitioners, and provides the method
of its withdrawal if it shall appear on more than one cer-

tificate or petition for the same office. Whether the provision for notice to the candidate, and for his election as to which party appellation he desires his name to remain under, and for the omission of his name from the ballot on his failure to elect, violates any constitutional right is a question not arising in this case. No facts are alleged presenting that question, but the only question is the right of a group of petitioners to have the name of a candidate already nominated by a political party appear in two places on the ballot. It is not alleged that any intention exists not to print the candidate's name in accordance with the first nomination. If the provision for notice and election of nominations should be eliminated, the officer who must act, whether the nomination be for a State, county or municipal office, may justly regard the first nomination as the one to be printed on the ballot where only one can be so printed and the nominee does not within a reasonable time elect another.

The Primary Election law was passed in 1910, sections 58 and 59 of which, so far as necessary to be here considered, are as follows:

"Sec. 58. The persons receiving the highest number of votes at a primary as a candidate of a party for the nomination for an office shall be the candidate of that party for such office, and his name as such candidate shall be placed on the official ballot at the election then next ensuing. * * *

"Sec. 59. * * * When the nomination is made for an office to be filled by the electors of an entire city or village, including alderman, and where it is the duty of the city or village clerk to prepare the official ballot for the election, it shall be the duty of the city or village clerk, under this act, to place upon the official ballot to be voted at the election the names of all candidates nominated for office, as herein provided, as shown by the certificate of the canvassing board on file in his office." * * *

It is contended that these sections repeal, by implication, section 8 of the Ballot law. Repeals by implication are never favored, and a subsequent statute will never be held to have repealed a prior statute by implication unless the inconsistency between the two is irreconcilable. The Ballot act and the Primary act deal with different subjects. The former relates primarily to the printing and distribution of ballots and the conduct of the general election. It recognized existing methods of nominating candidates by political parties, provided a method for making nominations independent of parties, and concerned itself no further with nominations. It provided that the ballot should be formed from nominations so made, but that a candidate's name, by whatever method he might be nominated, should appear but once. The Primary act relates to the nomination of candidates by political parties, and adopts to a great extent for that purpose the machinery of the Ballot act. It does not concern itself, except incidentally, with the making or distribution of the ballots, the nomination of candidates independent of parties or the conduct of the general election. The declarations of sections 58 and 59 in regard to the placing of the names of candidates upon the official ballot have reference to the Ballot law and were not intended to repeal or change its provisions. The names of all candidates are to be placed by the proper officer upon the official ballot in accordance with the requirements of that law. It was not the intention of the legislature to change those requirements, and nominations made as the result of a primary election are in the same situation with reference to the ballot as were nominations made by political parties in conventions or caucuses before the Primary act required all such nominations to be made by a primary election.

It is insisted that in the requirements that a candidate's name shall appear but once on the ballot there is an unconstitutional and arbitrary discrimination between parties,

and also between the voters of different parties, in permitting the candidates nominated by one party to appear on the ballot under the party name and in refusing to permit the same candidates nominated by another party, to appear on the ballot under the latter party name. Most of the States of the Union now have a ballot law similar to our own, and many of them restrict the printing of the name of a candidate to one place on the ballot. In States whose statutes provide that the names of the candidates of the several parties shall be grouped together on the ballot in separate columns, it is held that the name of the candidate may appear in as many separate columns as he has received nominations. (*Simpson* v. *Osborn,* 52 Kan. 328; *Fisher* v. *Dudley,* 74 Md. 242; *Williams* v. *Dalrymple,* 132 Mo. 62.) In States where the names of candidates are required to be printed in alphabetical order under the designation of the respective offices, it is held that the name of a candidate can appear but once for the same office. (*State* v. *Allen,* 43 Neb. 651; *Sawin* v. *Pease,* 6 Wyo. 91; *Miller* v. *Pennoyer,* 23 Ore. 364.) These are all cases of merely statutory construction. In many of the States the statutes provide that a candidate's name shall appear but once upon the ballot, and the constitutionality of this provision has been called in question in various States, and has been sustained by the Supreme Courts of Michigan, North Dakota, Ohio, Washington and Wisconsin. (*Todd* v. *Election Comrs.* 104 Mich. 474; *State* v. *Porter,* 13 N. Dak. 406; *State* v. *Bode,* 55 Ohio St. 224; *State* v. *Superior Court,* 60 Wash. 370; *State* v. *Anderson,* 100 Wis. 523.) It was held unconstitutional in New York, (*Hopper* v. *Britt,* 203 N. Y. 144,) and by a divided court in California. *Murphy* v. *Curry,* 137 Cal. 479.

The regulation of elections is within the power of the legislature, within constitutional limitations. The constitution declares the qualification of voters and that all elections must be free and equal, yet a registration law was

held valid which excluded all voters who had not registered three weeks before the election. (*People* v. *Hoffman,* 116 Ill. 587.) All votes must be by ballot, yet the legislature may prescribe the form of the ballot and provide for its custody and distribution. The legislature must provide the method of conducting the election, counting the votes and declaring the result, and adopt such regulations that it will be practicable to secure a full and fair expression of the wish of the voters. It was said in *People* v. *Hoffman, supra,* that "elections are free where the voters are subjected to no intimidation or improper influence and where every voter is allowed to cast his ballot as his own judgment and conscience dictate. Elections are equal when the vote of every elector is equal, in its influence upon the result, to the vote of every other elector,—when each ballot is as effective as every other ballot." All regulations which tend to secure the integrity, secrecy and fairness of the ballot interfere to some extent with the convenience of the voter, but they are necessary to the purity of elections, and so long as they are reasonable and appropriate to the end sought and bear equally on the voters they are constitutional. If the State undertakes to furnish an official ballot some regulation is necessary to determine what names shall appear upon it. Every person has a right to be a candidate for any office for which he is legally qualified, but if every man might have his name on the official ballot great inconvenience might result. Therefore no person may have his name printed on the official ballot unless he has been nominated by a party or by a certain number of voters. The object of the official ballot is not to furnish voters with information as to the persons who are the candidates of their respective parties or of any party, but to enable them readily to indicate, in the prescribed form, the candidates of their individual choice. By an examination of the specimen ballots required by law to be posted five days before the election and to be published in newspapers

the voter can be prepared to mark his ticket readily when he goes into the voting booth, so as to comply with the time limit of five minutes allowed him for such marking in case all the booths are in use and other voters waiting. But it is not to the official ballot, which he cannot see until he gets it from the judge of election, or the specimen ballot, which he first sees five days before the election, that he looks to ascertain the candidates. The voter has acquired this information from other sources long before the form of the ballot is brought to his attention and will have made up his mind as to the candidates of his choice without any reference to such form. He looks at the ballot only to determine the method of indicating that choice. If he votes a straight party ticket he may indicate his choice by a single mark except in one case, and that is, where a nominee of his party has accepted a nomination for the same office by another party or by petition. It is argued that this is an unfair discrimination against the party and the voter whose candidate's name does not appear under the party name. In such case the voter must make two marks to indicate his choice. On the other hand, it is not uncommon for voters to be unwilling to vote for a candidate, although having their own party's nomination, who has received another party's nomination, and who may be regarded by the voters as a member of the other party in disguise. Such a voter may be said to be discriminated against by having to make more than one mark to indicate his choice when the nominee of another party for whom he does not wish to vote is placed in his party column. For instance, many supporters of the progressive ticket might have been unwilling to vote for republican or democratic candidates who were supporting the republican or democratic ticket. If these candidates were placed in their column then such voters must make more than one mark to indicate their choice, for they must then mark separately each candidate for whom they wish to

vote.   The object of the Ballot law is to afford to every legal voter the equal right with every other legal voter to cast his ballot freely for the candidates of his choice.   It gives every candidate the same opportunity to have his name upon the ballot once, in the column of the party of his choice.   Every voter has an opportunity to vote for him.   Neither the candidate nor the voter has a constitutional right to demand more.                    *Writ denied.*