STATE EX REL. METCALF ET AL., RELATORS, *v.* WILEMAN,
COUNTY CLERK, RESPONDENT.

(No. 3,555.)

(Submitted September 28, 1914. Decided October 5, 1914.)

[143 Pac. 565.]

*Elections—Ballots — Anti-fusion Statute — Constitutionality —*
*Statutes—Repeal by Implication.*

Elections—Ballots—Anti-fusion Statute—Validity of Act.

    1. *Held,* that the anti-fusion statute (Laws 1907, p. 120; Rev. Codes, sec. 545) was not impliedly repealed by the primary election law (Laws 1913, p. 570).

Statutes—Repeal by Implication.

    2. Repeal of a statute by implication is not favored by the courts.

Same—Repeal by Implication—Rule.

    3. To make the claim tenable that an earlier statute was repealed by a later one, the two Acts must be plainly and irreconcilably repugnant to, or in conflict with, each other, must relate to the same subject, and have the same object in view.

    [As to repeal of statutes by implication, see notes in 14 Am. Dec. 209; 88 Am. St. Rep. 271.]

Elections—Anti-fusion Statute—Constitutionality.

    4. *Held,* that the anti-fusion statute, *supra,* under which the name of a candidate for public office may appear but once upon the official ballot, does not trespass any constitutional provision, and is therefore a valid expression of the legislative will.

Original application by the state, on the relation of George Metcalf and others, for writ of mandate to compel Frank E. Wileman, as clerk and recorder of Granite county, Montana, to print the names of relators on the official ballot for the general election of 1914 in more than one party column. Proceeding dismissed.

*Mr. Henry C. Smith* and *Mr. George Padbury, Jr.,* for Relators, argued the cause orally.

*Mr. D. M. Kelly,* Attorney General, and *Mr. C. S. Wagner,* Assistant Attorney General, for Respondent; *Mr. Wagner* argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

At the primary election held on August 25, George Metcalf was duly nominated for state senator, Samuel Clark for sheriff, and Hugh T. Cummings for representative, for Granite county by the Progressive, Republican and Socialist parties. The county clerk of Granite county refuses to print their names on the official ballot for the general election in more than one party column; hence this proceeding.

1. The Act of the Tenth Legislative Assembly known as the [1-3] anti-fusion statute (Laws 1907, p. 120; Rev. Codes, sec. 545) specifically prohibits a county clerk from printing a candidate's name on the official ballot for a general election more than once; but it is insisted by counsel for these relators that that Act was repealed by the primary election law, enacted by the people in 1912 (Laws 1913, p. 570). The primary law does not contain any specific repealing provision, but only the general clause: "All Acts or parts of Acts inconsistent with or in conflict with the provisions of this Act are hereby repealed." So, if any repeal was effected, it was only by implication, and such a repeal is never favored by the courts. (*State ex rel. Hay* v. *Hindson,* 40 Mont. 353, 106 Pac. 362.) The following general rules of law are of universal application: "Where two legislative Acts are repugnant to, or in conflict with, each other, the one last passed, being the latest expression of the legislative will, must govern, although it contains no repealing clause. But it is not sufficient to establish such repeal that the subsequent law covers some, or even all, of the cases provided for by the prior statute, since it may be merely affirmative, or cumulative, or auxiliary. Between the two Acts there must be plain, unavoidable and irreconcilable repugnancy, and even then the old law is repealed by implication only *pro tanto,* to the extent of the repugnancy. If both Acts can, by any reasonable construction, be construed together, both will be sustained. Two statutes are not repugnant to each other unless they relate to the same subject. Furthermore, it is necessary to the implication of a repeal

that the objects of the two statutes be the same. If they are not, both statutes will stand, although they may refer to the same subject." (36 Cyc. 1073.)

That the two statutes now under consideration do not fall within the scope of the rules above is manifest. The anti-fusion statute deals exclusively with the official ballot to be used at the general election. The primary law deals exclusively with nominations of candidates to public office. The ballot law of which the anti-fusion statute is a part has nothing to do with nominations, but accepts those legally made, whether by convention, primary or direct petition. The primary law has nothing whatever to do with the official ballot to be used at the general election. It provides only for nominations, leaving all questions of ballot regulation to existing laws. These two statutes do not treat of the same subject and do not have the same object in contemplation. Furthermore, their provisions are not in irreconcilable conflict, or in conflict at all.

It may be conceded that under section 20 of the primary law, a person may be legally nominated for the same office by two or more parties. So, likewise, a person might have been nominated for the same office by conventions representing two or more parties, at any time between 1907 and 1912, and still he could have had his name printed on the official ballot but once. This precise question was disposed of so ably by the supreme court of Illinois, that we quote as follows: "Repeals by implication are never favored, and a subsequent statute will never be held to have repealed a prior statute by implication unless the inconsistency between the two is irreconcilable. The Ballot Act and the Primary Act deal with different subjects. The former relates primarily to the printing and distribution of ballots and the conduct of the general election. It recognized existing methods of nominating candidates by political parties, provided a method for making nominations independent of parties, and concerned itself no further with nominations. It provided that the ballot should be formed from nominations so made, but that a candidate's name, by whatever method he might be nominated,

should appear but once. The Primary Act relates to the nomination of candidates by political parties, and adopts to a great extent for that purpose the machinery of the Ballot Act. It does not concern itself, except incidentally, with the making or distribution of the ballots, the nomination of candidates independent of parties or the conduct of the general election. The declarations of sections 58 and 59 in regard to the placing of the names of candidates upon the official ballot, have reference to the ballot law and were not intended to repeal or change its provisions. The names of all candidates are to be placed by the proper officer upon the official ballot in accordance with the requirement of that law. It was not the intention of the legislature to change those requirements, and nominations made as the result of a primary election are in the same situation with reference to the ballot as were nominations made by political parties in conventions or caucuses before the Primary Act required all such nominations to be made by a primary election.'' (*People ex rel. Schnackenberg* v. *Czarnecki,* 256 Ill. 320, 100 N. E. 283.)

2. It is further contended that, if the anti-fusion statute was [4] not repealed by the primary election law, it is unconstitutional as violating section 1 of our Bill of Rights, and *Hopper* v. *Britt*, 203 N. Y. 144, Ann. Cas. 1913B, 172, 37 L. R. A. (n. s.) 825, 96 N. E. 371, is cited to sustain the position. The New York ballot law considered in that case provided for the circle at the head of the ticket and for a straight party vote by a single mark. It was held that the anti-fusion statute discriminated in favor of the man who desired to vote a straight ticket and whose ticket was complete as against the man who desired to vote a straight ticket and whose ticket was not complete on the ballot, and who must, therefore, make two or more marks to express his will. The gist of the opinion is compressed in a single sentence: ''While the Constitution does not guarantee that the elector shall be allowed to express his vote by a single mark, our position is that he is guaranteed the right to express his will by a single mark if other voters are given the right to

express theirs by a single mark and there is no difficulty in according the right to all." We content ourselves with saying that such an argument—if it can be called an argument—does not appeal to us. Our Bill of Rights applies to individuals, not to political parties. "All elections shall be free and open," and, "all elections by the people shall be by ballot," are the guaranties of the Constitution of Montana. But the same Constitution likewise provides: "The legislative assembly shall have the power to pass a registration and such other laws as may be necessary to secure the purity of elections and guard against abuses of the elective franchise." (Art. IX, sec. 9.)

Nearly every state in the Union now has the Australian ballot system in more or less modified form. In the absence of a statute prohibiting it, a candidate may rightfully have his name printed on the official ballot in the party column of every party nominating him. (*Simpson* v. *Osborn,* 52 Kan. 328, 34 Pac. 747; *Fisher* v. *Dudley,* 74 Md. 242, 12 L. R. A. 586, 22 Atl 2; *Miller* v. *Pennoyer,* 23 Or. 364, 31 Pac. 830; *Payne* v. *Hodgson,* 34 Utah, 269, 97 Pac. 132.) But it is an interesting historical fact that after experimenting with laws under which a candidate might have his name printed on the official ballot more than once, many of the states having the Australian system have adopted anti-fusion statutes prohibiting such a thing. Indeed, the people of Montana by direct vote voiced their approval of the anti-fusion principle, for in section 20 of the primary election law they specifically prohibit a candidate before the primary having his name printed on more than one of the several party tickets which make up the primary ballot. Under our election laws the voter is required to express his choice of candidates by a separate mark before the name of everyone for whom he desires to vote; and this may be said to impose some inconvenience upon him. So, likewise, does the law requiring a registration, the law requiring a voter to vote in the precinct of his own residence, the law arbitrarily fixing a time for opening and closing the polls; and, indeed, every measure looking to greater security and purity of election interferes to a greater or less

extent with the voter's convenience.  The ideal system, if convenience alone is considered, would provide for a circle at the top of each party column on the official ballot and countenance the straight party ticket voted by a single stroke of the pen. But after experimenting with such a system for a few years, our legislature determined that in the interest of intelligent voting, a change should be made and the circle was eliminated.

In *State ex rel. Scharnikow* v. *Hogan,* 24 Mont. 383, 62 Pac. 5833, this court in considering section 1 of Article III of the state Constitution, said that the declaration: "All political power is vested in and derived from the people," refers as well to the right of naming candidates for public office as it does to the right of the electors to vote for the candidates at the polls. However, our anti-fusion statute does not interfere with either right.  If the election is by ballot and is open and free, and every voter has an opportunity to express his choice equally with every other, no complaint can be made legitimately, and regulations designed to protect the ballot and secure fair elections cannot be disregarded merely because they operate to the inconvenience of some voter.

In *People ex rel. Grinnell* v. *Hoffman,* 116 Ill. 587, 56 Am. Rep. 793, 5 N. E. 596, it is said: "Elections are free, where the voters are subjected to no intimidation or improper influence, and where every voter is allowed to cast his ballot as his own judgment and conscience dictate.  Elections are equal, when the vote of every elector is equal, in its influence upon the result, to the vote of every other elector,—when each ballot is as effective as every other ballot."  When the question now under consideration was presented to the supreme court of Utah, that court said: "By the great weight of authority it was within the power of the legislature to declare that the name of a nominee or candidate shall be placed but once on the official ballot." (*Hayes* v. *Ross,* 41 Utah, 580, 127 Pac. 340.)

In each of the following cases an anti-fusion statute similar to our own was upheld: *State ex rel. Bateman* v. *Bode,* 55 Ohio St. 224, 60 Am. St. Rep. 696, 34 L. R. A. 498, 45 N. E. 195;

*Todd* v. *Election Commrs.*, 104 Mich. 474, 29 L. R. A. 330, 62 N. W. 564, 64 N. W. 496; *State ex rel. Runge* v. *Anderson*, 100 Wis. 523, 42 L. R. A. 239, 76 N. W. 482; *People ex rel. Schnackenberg* v. *Czarnecki*, above; *State ex rel. Fisk* v. *Porter*, 13 N. D. 406, 3 Ann. Cas. 794, 67 L. R. A. 473, 100 N. W. 1080; *State ex rel. Shepard* v. *Superior Court*, 60 Wash. 370, 140 Am. St. Rep. 925, 111 Pac. 233. In the last case the supreme court of Washington said: "The error of the relator's reasoning lies in assuming that an elector has an inherent right to vote in his own way, or in the manner of his choice. On the contrary, the law is—and it is declared without division of the courts—that the right to vote is neither a property right nor a right of person, but a mere political privilege which the legislature may regulate to any extent not prohibited by the state or federal constitutions." To the same effect, in principle, is *De Walt* v. *Bartley*, 146 Pa. 529, 28 Am. St. Rep. 814, 15 L. R. A. 771, 24 Atl. 185.

In the absence of some constitutional provision which our anti-fusion statute clearly trespasses, it is our duty to uphold the law. The motion to quash the alternative writ of mandate is sustained and the proceeding is dismissed.

*Dismissed.*

Mr. Chief Justice Brantly and Mr. Justice Sanner concur.