THE PEOPLE *ex rel.* Alexander A. McCormick, Petitioner, *vs.* ANTHONY CZARNECKI *et al.* Respondents.

*Opinion filed December 16, 1914—Rehearing denied Feb. 4, 1915.*

1. CONSTITUTIONAL LAW—*courts cannot set aside law as being contrary to public interest.* Where the legislature has acted upon a subject upon which it has power to legislate the courts have no power to set aside the law as being contrary to public interest, as the General Assembly is the sole guardian of the public interest and welfare.

2. SAME—*legislature had power to prohibit name of candidate from appearing twice on same ballot.* The provision of section 8 of the Ballot act which requires a candidate whose name appears on more than one certificate of nomination or petition for the same office to elect under which of the political party appellations he desires his name to appear upon the ballot is not unconstitutional, as the candidate has the right to have his name appear once upon the ballot, and every voter is thereby given an opportunity to vote for him.

3. ELECTIONS—*legislative policy has been to preserve integrity of political parties.* The provisions of the Ballot law and of the various primary election laws which have been enacted by the legislature manifest a clear purpose upon the part of the legislature to enforce and perpetuate an existing party system of government and to maintain the integrity of political parties, and such purpose is within the power of the legislature.

4. SAME—*person cannot be a candidate of two political parties for same office on the official ballot.* The provisions of section 8 of the Ballot law have been repealed by the Primary Election act only as to those which are wholly inconsistent with that act, and the provision which precludes a person from being the candidate of more than one political party for the same office on the official ballot has not been repealed and still governs the official ballot.

CARTER, J., specially concurring.

ORIGINAL petition for *mandamus.*

EDWARD B. BURLING, and DONALD R. RICHBERG, for petitioner.

CHARLES H. MITCHELL, (I. T. GREENACRE, of counsel,) for respondents.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

A primary election was held on September 9, 1914, under the Primary Election law as amended in 1913, (Laws of 1913, p. 310,) to enable the voters of the different political parties to choose candidates of such parties to be voted for at the election on November 3, 1914. Alexander A. McCormick filed two petitions to have his name placed on the separate ballots of different political parties as a candidate for the offices of president of the board of commissioners of Cook county and member of said board from the city of Chicago. One petition was to have his name placed on the ballot of the progressive party and the other to have his name on the ballot of the republican party. His name was placed on the separate ballots of said parties, and at the primary election he received the highest number of votes of any of the candidates on each of the ballots. The election commissioners notified him that under section 8 of the Ballot law he was required, within three days from receipt of the notice, to elect as to which of the separate political party appellations he desired his name to appear upon the ballot at the subsequent election. In response to the notice he appeared before the board by his attorney and denied the authority of the board to compel him to elect, claiming the right to have his name upon the official ballot in the separate column allotted to the progressive party and also in the column allotted to the republican party, but elected to have his name appear in the column of the progressive party if he could be required to elect. The board notified the representatives of the republican party that a vacancy existed in the nomination of that party for the offices of president of the county board and member of the county board from the city of Chicago. Thereupon, by leave of court, he filed in this court his petition, in the name of the People, for a writ of *mandamus* commanding the defendants, constituting the board of election commissioners of the city of Chicago,

to print his name on the official ballot as a candidate for the offices of president of the county board and member of the county board from the city of Chicago, both in the progressive party column and in the republican party column. The defendants demurred to the petition, and the cause was argued and decided on the demurrer. The writ was denied, with a statement that an opinion would be filed in the future giving the reasons for the decision.

The questions to be determined are whether the General Assembly has by legislative act prohibited the printing of the name of a candidate on the official ballot under different party appellations as a candidate of opposing political parties, and if so, whether such prohibition is in conflict with any specific limitation of legislative power imposed by the constitution. If the General Assembly has created such a prohibition in the legitimate exercise of legislative power the demurrer must be sustained and the writ denied, since the courts have nothing to do with the question whether such an exercise of power is just or unjust, wise or unwise. The General Assembly, chosen by the people at frequent intervals and directly responsive to their will, is the sole judge of such provisions of the law as will advance the interest of the people, and it is the sole guardian of the public interest and welfare. When it has acted upon a subject upon which it has power to legislate, the courts have neither the power nor disposition to annul or set aside the law if they should conceive it to be contrary to the public interest, and their power in passing upon an act is limited to the question whether it is within the legislative power. (*Munn* v. *People,* 69 Ill. 80; *Hawthorn* v. *People,* 109 id. 302; *Moeng* v. *People,* 138 id. 513; *People* v. *Thompson,* 155 id. 451; *People* v. *Rose,* 203 id. 46; *People* v. *McBride,* 234 id. 146; *Town of Cicero* v. *Haas,* 244 id. 551; *Gersch* v. *City of Chicago,* 250 id. 551.) No attention, therefore, can be given to the argument that there is no reasonable basis for a prohibition against a person being a candidate of different po-

litical parties or that the public welfare demands that the same person may be a candidate of as many parties as may choose to nominate him. It is apparent, however, that a prohibition against the same person appearing as the candidate of different political parties is not a prohibition against any or all voters voting for him at the election, which they may freely do if in their judgment the public interest demands that he should be elected. The law permits every voter to vote for whomsoever he pleases, and he is not deprived of freedom of choice by the prohibition in question.

When the provisions of the various acts relating to the nomination of candidates are considered, the purpose of the General Assembly to enforce and perpetuate an existing party system of government and to maintain the integrity of political parties is clearly manifest. The first legislation of a mandatory character for the regulation of nominations for office was the Ballot law, enacted in 1891, and it recognized the existence of political parties as a part of the public policy of the State. In every government certain principles and policies govern the administration, and in a government by the people such principles and policies are determined by the voters, at elections, in the choice of representatives and officials pledged to their application and enforcement. Those voters who believe in the same principles and desire to advance the same policies can only accomplish those ends by organization and association, so that political parties, which are purely voluntary organizations of voters of the same political faith, have universally been regarded as a necessary part of our system of government. Their recognized relation to government is stated by Mr. Bryce in The American Commonwealth, (vol. 2, p. 3,) as follows: "But the spirit and force of party has in America been as essential to the action of the machinery of government as steam to the locomotive engine, or, to vary the simile, party association and organization are to the organs of government almost what the motor nerves are to the

muscles, sinews and bones of the human body." In under-
taking legislation with respect to the nomination of candi-
dates for office the General Assembly had before it the po-
litical history of the State and country and the relation to
government which political parties had sustained, and it was
a question to be considered whether it was necessary for the
public good that party organization should be maintained,
and its judgment on that question of public policy is not
subject to revision by the courts.

When the General Assembly, in 1891, assumed some
measure of control over the nomination of candidates for
office for the purpose of an official ballot, the object was
regulation of political parties and not their disorganization
and destruction. Nominations were permitted by any con-
vention of delegates, caucus or meeting representing a po-
litical party as therein defined, and certificates of nomina-
tion or nomination papers were required to specify the
party or political principle which the candidate represented.
Provision was also made for the nomination of candidates
by groups of voters so that all voters might express a choice,
but it was provided that the name of any candidate whose
name might appear upon the ballot should not be added by
petition for the same office. In 1905 the first Primary law
in force throughout the State was passed, and was held void
in *People* v. *Election Comrs.* 221 Ill. 9. At a special ses-
sion of the General Assembly another act was passed, which
was held unconstitutional in *Rouse* v. *Thompson,* 228 Ill.
522. This was succeeded two years later by the Primary
law which was declared invalid in *People* v. *Strassheim,* 240
Ill. 279, and the present Primary law was passed in 1910
and amended in 1912, and again very extensively amended
in 1913. Running through all these acts is a manifest in-
tent to preserve the existence and authority of the various
political parties, and the main purpose of each has been to
regulate nominations by such parties and to protect and pre-
serve their organization. The act now in force provides

that the nomination of all candidates for the designated offices by all political parties shall be made in the manner provided for in the act and not otherwise. It declares what percentage of persons of a certain political faith shall constitute a political party, and whenever there are enough such persons to constitute a party they are compelled to nominate their candidates under the act. The ballot of each political party is to be separately printed, of different colors. No one can vote at a primary unless he declares his party affiliation, or if he has signed a petition for the nomination of a candidate of a party with which he does not affiliate, or has signed the nomination papers of an independent candidate, or has voted at the primary of any other political party within two years. At the top of the ballot there is to be printed, in large capital letters, words to designate the political party which the candidate represents. No one can sign a petition for a candidate for nomination unless such signer, at the time of signing the petition, is a qualified voter of the political party, and a sworn statement is required that the signers of a petition are qualified voters of the political party for which the nomination is sought. No party circle is to appear at the top of the ballot, and the act provides for the election of precinct committeemen and ward committeemen, who are to be the managers of the political party. Every possible safeguard is erected for the preservation and protection of party organization. The same intent is manifest in the City Election law, which provides that two of the election commissioners shall be selected from the two leading political parties and are to be men of well known political convictions; that in the selection of judges of election at least one shall be selected from each of the leading political parties, and that each of the political parties shall have a right to designate a canvasser for each precinct. While the question of the right of the relator to file two petitions and have his name upon two tickets of opposing political parties at the primary election is not di-

rectly involved in this case it is not to be understood from what is said that he had such a right, which would involve the proposition that while no one could sign a petition for his nomination without being a qualified voter of the political party and proved to be such by a sworn statement and could not vote at the primary election without declaring his affiliation with the party, the relator might become a candidate of a party to the principles and policies of which he would be opposed, and which, if elected, he would oppose, obstruct and defeat. Not only is the purpose of the General Assembly manifest from the history of legislation on the subject of nomination of candidates, but it was held in *Britton* v. *Board of Election Comrs.* 129 Cal. 337, that a law by which a single ticket was to be provided, to be marked in such manner as the voter should see fit, without regard to his party affiliation, was void, because subversive of political organizations, opposed to the principles of government, and rendering it possible for a political party to pass into the hands of political enemies and rivals.

Whether the relator's name was unlawfully printed upon both primary ballots or not, there is a direct prohibition of the Ballot law against such a right as is now claimed. When the Ballot law was originally enacted section 8 provided for a withdrawal of a candidate, but it contained no prohibition against the name of a candidate appearing twice upon the ballot. The lack of such a prohibition was regarded as a defect of the law, and in 1897 the section was amended with the manifest purpose of correcting such defect. It was then provided that in case a certificate of nomination or petition should contain or exhibit the name of any candidate for any office upon more than one of the certificates or petitions for the same office he should be notified that his name appeared unlawfully upon more than one of said certificates or petitions, and he was required to elect as to which of said political party affiliations or groups he desired his name to appear and remain under upon the bal-

lot. That section as amended in 1903 and now in force contains the same provision, and the only conceivable purpose of the amendment was to supply an omission. It was well known that minor political parties by exchanges of favors succeeded, by fusions at elections, against a party having a much larger number of voters than either of the parties to the fusion, and whether such combinations were contrary to the public interest was for the General Assembly and not the courts. It is argued that this provision of the Ballot law has been repealed by the Primary Election law, but it has neither been repealed expressly nor by implication, and it is still the law by which the official ballot is governed. It has only been modified or repealed as to provisions wholly inconsistent with the Primary Election law, and the provisions of the two laws in this respect are harmonious.

. The argument for the relator involves the destruction of the party system of government recognized both by the Ballot law and the Primary Election law, both of which secure the separate character of political parties. If the relator can be the candidate of two parties he can be the candidate of all six parties of the State, and if he has that right every other candidate has the same right, so that the name of every candidate for office on the official ballot might appear in every party column, to the utter destruction of political parties and the defeat of the purpose of the Primary law, which is to permit voters to name candidates who, if elected, will apply the principles and put into effect the policies of the party to which the voter belongs. The argument for the relator does not go so far as to claim the right of all candidates to be on all tickets, but is limited to the claim that if a particular candidate is so distinguished that the voters of all parties desire to do him and themselves honor by naming him as their candidate they should have that privilege. There is no distinction, in right, between individuals, and as the General Assembly has not extended the

privilege for particular instances we cannot create one. A further argument is that the prohibition should not be applied to an office having no political complexion, but it was within the province of the General Assembly to consider and determine what office should come within the prohibition. Whether it should be applied only to general or national elections and between such elections the political parties should be dismembered and disorganized, to be re-created and re-organized when national questions are at issue, or whether it is essential that the organization should continue, was a question for the General Assembly, which has been determined and expressed in the act, not, however, to the prejudice or detriment of the independent voter, to whom the act secures the absolute and untrammeled right to vote for whomsoever he may choose.

The other question involved is whether the General Assembly had power to enact the prohibition, and no provision of the constitution has been pointed out which in any manner limits such power. The question of the right of a candidate to have his name appear twice upon the official ballot, once as a candidate of a political party and again by petition, was settled in *People* v. *Czarnecki,* 256 Ill. 320, and there can be no possible distinction between certificates of nomination as the result of a primary election and petitions. Each candidate has the opportunity to have his name appear upon the ballot once and every voter has the opportunity to vote for him, which secures to both every right guaranteed by the constitution.

These are the reasons for which the demurrer was sustained and the writ denied.          *Writ denied.*

Mr. JUSTICE CARTER, specially concurring:

I agree with the conclusions reached in the foregoing opinion. The questions involved, however, are of such public importance that I have deemed it advisable to offer some

further suggestions bearing on the questions raised in the briefs.

Counsel for petitioner earnestly argue that the provisions of the Australian Ballot law, invoked to prevent the name of the relator in the petition from being placed twice upon the ballot, are in effect repealed by the amendments heretofore passed to certain sections of said Ballot law. That law was enacted in 1891. (Laws of 1891, p. 107.) The last proviso in section 5 of that act as then passed stated that "the name of any candidate whose name may appear in any other place upon the ballot shall not be so added by petition for the same office." This is the only provision in the original act referring in any way to a candidate's name appearing more than once on the ballot.

Sections 3 and 8 of said Ballot law were amended in 1897 by an act that went into force July 1 of that year. (Laws of 1897, p. 211.) By this amendment a proviso was added to section 3, stating "that the names of candidates shall not be placed upon the ballot more than once for the same office or under more than one party appellation or title." The amendment to section 8 provided, among other things: "In case the certificate of nomination or petition, as provided for in this act, shall contain or exhibit the name of any candidate for any office upon more than one of said certificates or petitions, (for the same office,) then, and in that case, the Secretary of State or county clerk, as the case may be, shall immediately notify said candidate of said fact and that his name appears unlawfully upon more than one of said certificates or petitions, and that within five days from the receipt of said notification said candidate must elect as to which of said political party appellations or groups he desires his name to appear and remain under upon said ballot, and if said candidate refuses, fails or neglects to comply with the provisions herein, then, and in that case, the Secretary of State or county clerk, as the case may be, shall not permit the name of said

candidate to appear or be printed or placed upon said ballot under any or either of said political party appellations or groups."

In 1898 a primary election law was passed, (Laws of 1898, p. 11,) and at the same session section 3 of the Ballot law was again amended by striking out the proviso added by the amendment of 1897 and inserting in place thereof a proviso which stated that in any county, city or village or incorporated town which had adopted the Primary act in question, candidates could not have their names printed on said official ballot unless they had been nominated in accordance with the provisions of said Primary act. (Ibid. p. 10.)  This proviso is still a part of said section 3.

In 1903 section 8 of the Ballot act was again amended, but the only change in the reading of the act as amended in 1897 was as to the number of days in which the nomination papers should be filed with the Secretary of State or proper clerk.  The same provision above quoted, which was inserted in the section by the amendment of 1897, was re-enacted by the amendment of 1903.  (Laws of 1903, p. 174.)

Sections 3, 5 and 8 are now part of the Ballot law with provisions stated as above indicated.  There has been no change or amendment in any of these sections, or in any other section of the Ballot law, affecting the question here under discussion since the dates mentioned.  If any of the primary laws have amended any of these sections of the Ballot law it has been by implication and not by direct reference.  Manifestly, when the legislature re-enacted the provisions of section 8, requiring the candidate, if his name appeared in more than one certificate of nomination or petition, to elect as to which party appellation or group he desired his name to appear and remain under upon said ballot, the legislature was not of the opinion that the primary laws theretofore passed had repealed, by implication or otherwise, the provision in question.  Indeed, it seems obvious from the fact that section 3 was amended so as to

provide that candidates must be nominated by the provisions of the Primary law, that the legislature clearly intended the provision of section 8 here in question to apply to candidates nominated under the Primary act. I find no specific provision in the present Primary law that in any manner weakens the force of this reasoning.

The argument that sections 58 and 59 of the present Primary law necessarily repeal, by implication, the provision in question of section 8 of the Ballot law was raised in *People* v. *Czarnecki*, 256 Ill. 320, and held without merit.

Counsel for petitioner most urgently insist that the provision of the Ballot law in question is contrary to public policy and therefore unconstitutional. In the case last referred to, this court passed upon that very question. To hold as now contended by counsel would be to overrule what was there decided. That decision not only passes upon the question that the name of the candidate cannot be added to the ballot by petition, but also, by its reasoning, upon the question that such name cannot appear twice on the ballot for the same office, no matter whether nominated by political parties or by petition. I agree with the argument of counsel that the right of the voters to write the name of a candidate on the ballot on election day is of little practical value as affecting the results of an election in large cities, with their thousands of voters. This is especially true with a ballot where there is a circle at the head of each ticket, as in this State. However much any member of this court might agree with the argument of counsel that the voters should have the right, particularly in local matters, to have the name of a candidate printed on the ballot more than once for the same office under different party headings, if desired, that argument, under *People* v. *Czarnecki, supra,* is clearly one to be addressed to the legislature for an amendment to the law, and not to the courts under the law as it now reads. This conclusion is in full accord with the previous holdings of this court,

and with the argument so frequently advanced that courts should not by their decisions overrule the plain purpose of statutes as enacted, no matter how unwise the members of the court might deem such legislation.