BARCELO et al. v. SALDANA, Executive Secretary of Porto Rico.

No. 2610.

Circuit Court of Appeals, First Circuit.

Dec. 23, 1931.

O. B. Frazer, of New York City (Antonio R. Barcelo, Miguel Guerra Mondragon, Manuel A. Martinez-Davila, and Angel Arroyo Rivera, all of San Juan, Porto Rico, on the brief), for appellants.

William C. Rigby and Fred W. Llewellyn, both of Washington, D. C. (James R. Beverley, Atty. Gen., of Porto Rico, and Blanton Winship, Judge Advocate General, of Washington, D. C., of counsel), for appellee.

Before BINGHAM and WILSON, Circuit Judges, and MORRIS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a decree of the Supreme Court of Porto Rico denying the petition of the appellants for a writ of mandamus to compel the defendant, who is the Executive Secretary of Porto Rico, to register the names of the appellants as nominees of the Union Party of Porto Rico, respectively, for the office of Resident Commissioner of Porto Rico at Washington, and as a member of the Board of Review and Equalization of Porto Rico.

The first issue raised before this court is on a motion to dismiss the appeal for lack of jurisdiction under paragraph 4, § 128 (a), of the Judicial Code, 28 USCA § 225 (a), on the ground that no federal question was involved in the decision of the Supreme Court, and that the value in controversy, exclusive of interests and costs, does not exceed the sum of $5,000.

It is not urged by counsel for the appellants that jurisdiction exists on the second ground. They rest their case on the question of jurisdiction on the ground that a federal question is involved, in that, if the decision of the Supreme Court is permitted to stand, it would, in violation of the Constitution of the United States and section 2 of the Organic Act of Porto Rico, impair the validity of a contract entered into between two political parties, and would deprive the people of Porto Rico of equal rights under the law, and would unreasonably deprive them of the privilege of suffrage, which was extended to them under section 35 of the Organic Act, as well as under sections 25, 26, 27, 28, and 36.

The main facts out of which the issues arise in this case, both as to jurisdiction and on the merits, are as follows: Since 1904 the Partido Union de Puerto Rico, or the Union Party of Porto Rico, which will hereinafter be referred to as the Unionist Party, has been the majority party in Porto Rico. From 1904 to 1924 another political party designated as the Partido Republicano Puertorriqueno, or the Republican Party of Porto Rico, which will hereinafter be referred to as the Republican party, has contested the elections with the Unionist Party. In 1906 a third party appeared, which, without printing its Spanish title, may be referred to as the Socialist Party, but which had few followers until 1917. In 1920 it polled nearly 60,000 votes.

For some reason, which does not appear in the record, the Unionist Party and the Republican Party decided to form an alliance in the election of 1924, which they did by calling conventions of their respective parties in May of that year, each of which adopted a resolution to the effect that the said parties should form a political alliance or coalition under the name of the Porto Rican Alliance, which "shall assume and exercise all the powers and prerogatives appertaining to the two historical parties of Porto Rico called the Porto Rico Union Party and the Porto Rican Republican Party."

Arrangements were agreed upon for the management of the affairs of the Alliance, the Central Committees of the two parties to remain in recess "for the duration of the coalition."

As a result of this coalition, there was a split in the Republican Party and a new or fourth party was organized, which styled itself the Constitucional Historice Party, which will hereinafter be referred to as the Constitutional Party.

In the general election of 1924, as a result of the coalition, the Unionist party and the Republican Party agreed on candidates and each party nominated the same persons for the several offices to be filled, but they were grouped under the separate party names and insignia on the ballot in that election, which they could do under the Election and Registration Law of Porto Rico as it then stood, which provided for a form of the Australian ballot.

The Socialist Party and the new Constitutional Party also took a leaf out of the book of the Alliance and nominated the same candidate for Resident Commissioner at Washington.

The result of this arrangement was that the Unionist Party in the election of 1924 still remained the majority party and the Alli-

ance elected their candidates by a substantial majority.

In May, 1927 (Laws 1927, p. 394, No. 1), sections 40 and 42 of the Election and Registration Law of Porto Rico were both amended, as counsel for appellants claim, as a result of complaints, that, since the Unionist Party and the Republican Party each cast more votes in prior elections than the Socialist Party, they had all the important election officials at the polls under the law. Whether the reason advanced by counsel was the real reason for the amendments, it is unnecessary to determine. The returns from the 1924 election, however, disclose that the Republican Party has lost its standing as the second party numerically, owing to the split in its ranks due to the Alliance, and the Socialist Party has assumed that position. In any event, the Legislature in 1927, Act No. 1, adopted as an amendment to section 40, a provision common in many of the states, preventing two or more parties from fusing by each nominating the same person for the same office. Section 40 as amended now reads as follows:

"Section 40. No person shall be a candidate for more than one office, *nor for the same office on two or more different tickets*. If he has been nominated for two or more offices on one or more tickets *or for the same office on two or more tickets*, he must select the office and ticket on which he prefers his name to appear as a candidate. In the event of a candidate failing to make such selection prior to twelve o'clock noon on September 30th, his name shall be certified on the ticket and for the office for which he was first nominated. Should it be impossible to determine the office or ticket for which he was first chosen, then his name shall be certified for the office or tickets first named in the petition or certificate nominating him." (The essential parts of the amendment are indicated by the italics.)

To section 42, which regulates the use of party names and insignia on the ballots and how they may be changed, the amendment of 1927 added a provision, with the evident purpose of permitting the alliance entered into between the Unionist Party and the Republican Party in 1924 to continue, if they so elected, but under a new arrangement as to the grouping of candidates, viz. instead of each member of the alliance grouping the candidates of both parties under its own party name, which could no longer be done under section 40 as amended, an alliance or coalition of parties was permitted to adopt a new general name and insigne, containing the insignia of each party of the alliance and register the candidates of the alliance in one group under the general name and insigne so adopted.

The amendment to section 42 reads as follows:

"Provided, That such parties as at the previous election went to the polls as an alliance or coalition and registered separate tickets in which the same candidates either totally or in part appeared for the same offices, may file in the office of the Executive Secretary of Porto Rico on petition of the central directing organization of said alliance or coalition, a general name and an insigne for said alliance or coalition containing the insigne of each of the allied or coalition parties, and underneath it one sole ticket shall be registered under the prescriptions of section 40 of the Election and Registration Law as hereby amended; Provided, further, That any alliance or coalition, going to the polls under one name or insigne as determined in the foregoing proviso, shall be considered as one single party with the same prerogatives, rights and duties as under the law pertained to the parties composing it, and hereafter it shall be considered as a principal or organized party according to the number of votes obtained thereby at the election, as herein provided."

In March, 1928, the Directive Committee of the Alliance, claiming to represent both members of the Alliance, voted to continue the alliance and coalition and proceeded to nominate candidates for the several offices, and certified the list to the Executive Secretary, together with the party name to be placed at the head of their group of candidates on the ballot and the insigne, which also included the insignia of the members of the Alliance. The name adopted was the Alianza Puertorriqueno, or the Porto Rican Alliance, and the insignia adopted was "an evenly balanced pair of scales bearing the name Alianza Puertorriqueno and embodying also the names of the two historical parties: 'Union de Puerto Rico' and 'Republicano Puertorriqueno' and their respective insignia: the two hands and the eagle."

Under date of August 28, 1928, a certificate was also forwarded to the Executive Secretary, stating that in a General Assembly of the Alianza Puertorriqueno held in the Municipal Theatre of San Juan on August 26, 1928, it was resolved as follows:

"B. To ratify the resolution of the Directive Committee of the Porto Rican Alli-

ance of March 13, 1928, communicated to the Executive Secretary of Porto Rico and by virtue thereof the Porto Rican Alliance will go to the polls under a single ticket and insigne already adopted and registered with the official name of the Porto Rican Alliance of the Porto Rican Union party and the Porto Rican Republican party, the historical names of the two allied parties together with their symbols, personalities, rights and prerogatives thus remaining as the patrimony of The Alliance.

"That the Directive Committee of the Porto Rican Alliance, at its meeting of August 28, 1928, resolved to use as the abbreviated name of its collectivity that of Porto Rican Alliance and under that abbreviated name shall file in the office of the Executive Secretary of Porto Rico all of the certificates of conventions."

Nominations for the several offices were thereafter sent in by the Alliance.

The two other parties, the Socialist and the Constitutional Party, were not to be outdone, and they also entered into an alliance, as they were permitted to do under the amendment to section 42, having voted for the same candidate for one office in 1924, and they too nominated a single ticket, with the result that there was, apparently, more defection from either the old Union or Republican Party, or both, and the result was not satisfactory to some of the leaders of the old Unionist Party, as the Porto Rican Alliance only won the election by less than 10,000 votes over the Socialist-Constitutional Alliance.

The extent of this dissatisfaction and alarm was exposed by one of the appellants in a fervent speech delivered in a convention in 1929, purporting to be held by the old Unionist Party, in which he said of the political situation, among other things: "And if this situation is to continue, it may be foretold that the nearly fatal result attained by us in the last election, would be duplicated and centuplicated until the Union de Puerto Rico should suffer the greatest of defeats, thus disappearing, with her from Porto Rico, the highest exponent of patriotism, dignity and pride."

It was natural, in the face of possible defeat at the next election, that disagreements among the leaders should arise, and the leaders of the old Unionist Party then took action to effect a withdrawal from the Alliance, in which they were apparently supported by a very considerable majority of the active members of the old Union Party, though there were those who insisted on preserving the Alliance and fighting out the battles under its name and insigne.

However, a majority of the members of the old Central Committee of the Unionist Party met and discussed the question and voted to call a convention of the Unionist Party. A convention was held and a resolution passed to withdraw from the Alliance. While this convention was being held, notices were sent out for an assemblage of the Porto Rican Alliance. A meeting was held at which some of those formerly belonging to the Unionist Party were present, and it was voted by this assemblage to continue the alliance, and retain the party name and insigne adopted in 1928. Each party, however, claims that the convention held by the other party, at which these actions were taken, was a pseudo convention.

Under these circumstances and under section 42 as interpreted by the Attorney General of Porto Rico, the Executive Secretary refused to register the names of the appellants as candidates under the name of the old Union Party with its former insigne of the clasped hands, for the election to be held in 1932, on the ground that the word "Union" and the insigne of the clasped hands were a part of the name and insigne of the Porto Rican Alliance. A petition for writ of mandamus was therefore filed by the appellants to compel the Executive Secretary to so register their names.

A majority of the Supreme Court of Porto Rico sustained the action of the Executive Secretary and held that the alliance of the two old parties formed in 1924, having voluntarily acted under the amendment to section 42 in 1928, became a new political party with a distinct name and insigne; and that the appellants, while they and their followers, if they chose, could adopt a new name and new insigne, could not use any part of the name or insigne of the Porto Rican Alliance which still claimed it and the right to use it.

From the decree of the Supreme Court the petitioners appealed to this court, and as reasons of appeal have set forth fourteen assignments of error. An analysis of the assignments, however, will disclose that with one exception they either assert findings and rulings by the court below, which are not substantiated by the record, or relate to rulings of general law or interpretations of a local statute as applied to local affairs, or in-

volve political rights that are not protected either under the Federal Constitution or the Organic Act of Porto Rico, and hence involve no federal question.

The only real ground on which the appellants can base their claim that a federal question is involved in the rulings of the court below is set out in the eleventh assignment as follows:

"That the construction given by the court below to the aforesaid sections 40 and 42, and specially to section 40 of the Election and Registration Law as amended in 1927, renders the said statutes in conflict with the Organic Act of Porto Rico, sections 25, 26, 34, 35, 36 and 37 thereof, in connection with the right of suffrage, inasmuch as it impairs and defeats the free combination of voters through political coalition or fusion tickets."

We think the inclusion here of section 34 of the Organic Act must have been an inadvertence. No question was raised below under this section; the court below made no ruling under it; and there immediately follows in the assignment, after the enumeration of the several sections referred to, these significant words, "in connection with the right of suffrage." Section 34 has no relation to suffrage as have each of the other sections enumerated. Counsel, however, have urged in their brief here that the amendments to sections 40 and 42 in 1927 are invalid for want of proper specifications in the title of the act, but we think without merit, as the title was sufficient under the rulings of the Supreme court and of this court. Posados v. Warner, Barnes & Co., 279 U. S. 340, 344, 49 S. Ct. 333, 73 L. Ed. 729; Martinez v. People of Porto Rico (C. C. A.) 46 F. (2d) 427.

As to whether this assignment raises a substantial federal question may be a debatable one. As counsel for appellee point out, the mere reference to an article of the United States Constitution or a federal statute does not raise a federal question; and a federal question essential to give jurisdiction to an appellate federal court must be substantial and necessarily involved in the opinion of the court below. New Orleans Waterworks Co. v. Louisiana, 185 U. S. 336, 344-346, 22 S. Ct. 691, 46 L. Ed. 936; Heitler v. United States, 260 U. S. 438, 439, 43 S. Ct. 185, 67 L. Ed. 338; Equitable Life Assurance Society v. Brown, 187 U. S. 308, 311, 23 S. Ct. 123, 47 L. Ed. 190.

However, we are inclined to the view that the court below in its opinion ruled on the question of whether section 42 contravened any of the sections of the Organic Act relating to suffrage, and since the Organic Act, unlike a State Constitution, is a federal statute, the appellants are entitled to be heard here on that issue.

Counsel for appellants persistently refer to section 40 as being unconstitutional, and insist it is so linked with section 42 that, if section 40 violates the Organic Act, section 42 must also be held to do so, or at least be rendered invalid because both were included in the same act. The connection between the two sections, however, is not sufficiently clear, we think, to require them to stand or fall together. Nor do we think section 40 was involved in the question of whether the Union Party could or did withdraw from the Alliance in 1929, and retain its old prerogatives as to name and insigne. The two sections relate to entirely different subjects—one to the grouping of candidates; the other to the adoption of party names and party insignia to be placed on the ballot over the party nominations and the effect of joining in an alliance or coalition. The reference in the amendment to section 42 to the prescriptions in section 40 does not necessarily render section 42 dependent on section 40. The reference was entirely superfluous. Every party, whether formed by the coalition of two parties or not, was subject to the provisions of section 40, as well as to the other provisions of the Election Act.

Neither is the fact that they were coupled together in one act conclusive of their interdependence. They are two separate sections of one general act which govern registrations, nominations and elections in Porto Rico.

Counsel for the appellants have assumed that the Supreme Court in its majority opinion held that section 40 was constitutional, but a careful examination of the opinion discloses no ruling on this section either one way or the other. In fact, the court expressly states that it does not rule upon it. The court evidently did not consider section 40 as involved in the issues before it.

However, the amendment to section 40 has now been so often held to be a proper regulation of the privilege of suffrage under the Australian ballot system of voting that we think the Supreme Court might well have held it did not violate any of the provisions of the Organic Act. See People v. Czarnecki, 266 Ill. 372, 107 N. E. 625; People v. Czarnecki, 256 Ill. 320, 100 N. E. 283; Todd v. Kalamazoo, etc., Election Com'rs, 104 Mich.

474, 62 N. W. 564, 64 N. W. 496, 29 L. R. A. 330; Helme v. Lenawee County Election Com'rs, 149 Mich. 390, 113 N. W. 6, 119 Am. St. Rep. 681, 12 Ann. Cas. 473; State v. Coburn, 260 Mo. 177, 168 S. W. 956; State v. Wileman, 49 Mont. 436, 143 P. 565; State v. Porter, 13 N. D. 406, 100 N. W. 1080, 67 L. R. A. 473, 3 Ann. Cas. 794; State v. Bode, 55 Ohio St. 224, 45 N. E. 195, 34 L. R. A. 498, 60 Am. St. Rep. 696; Hayes v. Ross, 41 Utah, 580, 127 P. 340; Payne v. Hodgson, 34 Utah, 269, 97 P. 132; State v. King County Superior Ct., 60 Wash. 370, 111 P. 233, 140 Am. St. Rep. 925; State v. Anderson, 100 Wis. 523, 76 N. W. 482, 42 L. R. A. 239.

The only state courts holding to the contrary are California in a divided opinion, which state has since rendered the opinion of the court ineffective by a constitutional amendment; and New York, which has followed the practice of years standing of electing judges by the same nominations by the two leading parties.

By the same token we think there is nothing in the court's interpretation of section 42 that is in contravention of any provision of the Organic Act, even if it were erroneous. It relates solely to the rights of political parties and in no way unreasonably interferes with the right of the electors voting for any candidate they see fit, whose name appears on the ballot, any more than the election law did before the amendment was made. The free expression of the right of suffrage is no more interfered with as to an elector who cannot read or write under a law allowing his party to join with another party and group their candidates under one name and insigne, than it is under a law permitting two parties to group the same candidates under two party names and insigne. The illiterate elector votes for the same candidates in either case, and exercises just as much intelligence and freedom of choice in voting. It may interfere with the plans of political leaders, but it does not interfere with the organization of as many political parties as the people of Porto Rico see fit to establish, or the exercise of the rights of suffrage by inserting the name or names of any candidate an elector desires to vote for in his party column.

The only other question raised by the assignments of error is whether the Supreme Court of Porto Rico in its majority opinion correctly interpreted section 42 as applied to the alliance of the Union and Republican Party. Unless section 42 is held to contravene the Organic Act, this is purely a local issue. While this section may be susceptible of the interpretation placed on it by the appellants, it is not so clear that it is the only construction as to warrant this court in rejecting the construction by the Supreme Court of Porto Rico, which is not without foundation, even though we might even adopt the other as a court of first instance. Cardona v. Quinones, 240 U. S. 83, 88, 36 S. Ct. 346, 60 L. Ed. 538; Graham v. O'Ferral (C. C. A.) 248 F. 10; Trujillo & Mercado v. Succession of Rodriguez (C. C. A.) 233 F. 208, 212; Succession of Garcia v. Hernandez (C. C. A.) 270 F. 455, 458.

The suggestion may also be pertinent as bearing on the correctness of the result arrived at by the court below, that, while the sponsors of the amendment provided in detail for the method of joining two parties in an alliance, it made no provision for any method of disentangling an alliance of political parties once made under section 42. A partnership is hardly an analogous organization.

In any event, the organization and control of political parties in Porto Rico, in so far as any justiciable questions are involved, that do not concern the Organic Act, present questions which are of a purely local nature, of which this court has no jurisdiction on this appeal.

The judgment of the Supreme Court of Porto Rico is affirmed with costs.