### GRAHAM et al. v. O'FERRAL et al.

(Circuit Court of Appeals, First Circuit. January 24, 1918.)

No. 1149.

1. COURTS ⬤⟶406(1)—CIRCUIT COURT OF APPEALS—REVIEW OF DECISIONS OF SUPREME COURT OF PORTO RICO

The Circuit Court of Appeals for the First Circuit, in reviewing a judgment of the Supreme Court of Porto Rico, will not, on a pure question of local law, disturb the judgment of the lower tribunal, except on conviction that clear error was committed.

2. COURTS ⬤⟶406(1)—CIRCUIT COURT OF APPEALS—REVIEW OF DECISIONS OF SUPREME COURT OF PORTO RICO.

A determination by the Supreme Court of Porto Rico that plaintiffs by reason of prescription had lost their rights to maintain an action cannot be deemed so clearly erroneous as to warrant disturbance by the Circuit Court of Appeals of the First Circuit, where plaintiffs were over 21 years of age on December 18, 1899, when the age of majority in the island was by the United States military government declared to be 21, which age was continued in Civ. Code, § 317, effective in March, 1902; this being particularly true, as there was more than 4 years' unexplained delay, if the age of majority should be deemed 25, as fixed by the Spanish law.

3. COURTS ⬤⟶406(1)—CIRCUIT COURT OF APPEALS—REVIEW OF DECISIONS OF SUPREME COURT OF PORTO RICO.

Where one of the plaintiffs, the widow of a Porto Rican, granted a resident of Porto Rico authority to take in her name all steps necessary for the settlement of the estate of her deceased husband, and to perform all and every act inherent to his power until the final termination of the testamentary proceedings, determination by the Porto Rico Supreme Court that such attorney had authority to represent the widow, whether the estate was settled judicially or extrajudicially, cannot, in view of the widow's approval of the accounts based on the settlement, be deemed clearly erroneous.

4. INFANTS ⬤⟶77—PARTIES—GUARDIAN AD LITEM.

Where the guardian ad bona of infants suggested to the court the necessity of the appointment of a guardian ad litem to represent them in the settlement of the estate of their father, and the courts of Porto

---

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Rico. in accordance with the requirements of law, appointed a guardian ad litem before settling the estate. the infants were properly before the court; it having jurisdiction of the estate.

5. INFANTS ⬤80(1)—GUARDIANS AD LITEM—APPOINTMENT—PETITION.

Where an infant's minority and the disqualification of her nearest relatives were truly represented to the Porto Rico court in a suggestion for the necessity of the appointment of a guardian ad litem, the fact that the suggestion was made by one who, without authority, was purporting to act as guardian ad bona for the infant, does not invalidate the appointment of the guardian ad litem.

6. INFANTS ⬤80(3)—GUARDIANS AD LITEM—APPOINTMENT—OBJECTIONS.

Where the mother of infants made no objection to the appointment of a guardian ad litem by the Porto Rico court pursuant to the suggestion of one purporting to act as guardian ad bona, and she approved and accepted a settlement of the estate of her deceased husband, such mother cannot thereafter assert that the appointment of the guardian ad litem was invalid.

7. INFANTS ⬤80(3)—GUARDIANS AD LITEM—APPOINTMENT—OBJECTIONS.

Where a grandmother of infants, who resided in Porto Rico, though the next nearest relative after disqualification of their mother, did not object to appointment of a guardian ad litem to represent them in the settlement of the estate of their father, and did not until after the settlement renounce in favor of the infants and their mother, such grandmother cannot attack the validity of the appointment.

8. INFANTS ⬤77—GUARDIAN AD LITEM—COLLATERAL ATTACK.

Where the appointment of a guardian ad litem to represent infants in proceeding for the settlement of the estate of their deceased father by the Porto Rico courts was valid, the infants were before the court, and were not entitled to claim any new and independent accounting in partition of the estate.

9. COURTS ⬤106(1)—CIRCUIT COURT OF APPEALS—REVIEW OF DECISIONS OF SUPREME COURT OF PORTO RICO—MATTERS FOR DETERMINATION.

Where determination of the Supreme Court of Porto Rico, affirming a judgment of the district court in favor of defendants, was affirmed on the merits, the question whether the appeal should be dismissed, because one of the defendants was not made a party to the appeal, need not be disposed of.

Appeal from the Supreme Court of Porto Rico.

Suit by Andres B. Crosas Graham and others against Andres Crosas O'Ferral and another. From a judgment of the Supreme Court of Porto Rico, affirming a judgment of the district court for defendants, plaintiffs appeal. Affirmed.

S. Mallet-Prevost, of New York City (Curtis, Mallet-Prevost & Colt, of New York City, on the brief), for appellants.

Howard Thayer Kingsbury, of New York City (Frederic R. Coudert, of New York City, on the brief), for appellees.

Before DODGE, BINGHAM, and JOHNSON, Circuit Judges.

DODGE, Circuit Judge. This is an appeal from a judgment of the Supreme Court of Porto Rico rendered March 5, 1913, affirming a judgment rendered by the district court of San Juan on May 24, 1910. The opinion of the Supreme Court is reported 19 P. R. R. 184.

There are three appellants, namely, Elena Graham O'Brien and Andres B. and Eduarda Crosas Graham, composing the succession of

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Eduardo E. Crosas O'Ferral, who died November 8, 1877. The first-named appellant is his widow. The other two are his children. Andres B. was born April 4, 1877; Eduarda was born June 14, 1878, after her father's death.

The appellants brought the suit in the district court, which resulted in the above judgment, now appealed from, on November 14, 1908. It was entitled:

"Action for nullity of acts and contracts, cancellation of inscriptions, dissolution of community, accounting of executorship and demand for inheritance."

The defendants named were Andres Crosas O'Ferral, the present appellee, and Rafael Margari. The court was asked to declare null and void certain conveyances, by Margari to the present appellee, of property wherein such succession claimed an interest; to declare null and void a subsequent partition, inventory, and assessment of the estate of said Eduardo E. Crosas O'Ferral, made by said appellee, and approved June 7, 1877, by the judge of first instance for the Cathedral district in San Juan, together with certain transactions by said appellee involved in or connected therewith; and also to require an accounting by the appellee of said decedent's estate in his charge as executor. The district court decided in favor of the defendants and dismissed the complaint.

When the above suit was brought, the partition proceedings referred to had stood approved for 21 years. The conveyances by Margari to the appellee had stood unquestioned for a still longer period. The two children above named were then, respectively, 31 years and 7 months and 30 years and 5 months old. It does not appear that their mother was not of full legal capacity, either when said conveyances were made or when said partition proceedings were approved. It appeared without question that she had been represented in said proceedings by one Miguel Sainz, under a power duly executed by her, and her own testimony was that she had herself accepted at the time, as satisfactory, accounts based thereon, as approved by said court, subsequently submitted to her by the appellee.

[1 2] 1. The first question is whether the appellants had not lost by lapse of time, before February 14, 1908, all right to attempt the avoidance of the conveyances, proceedings, and transactions set forth in their complaint. Four judges of the Supreme Court were of opinion that they had. The court nevertheless dealt with the case on its merits, as had the district court, and, having done so, approved the judgment below. One of the five judges, however, while concurring in this result, did so "except as to the discussion of prescription." In the district court, though prescription had been set up as a defense, it was not expressly discussed or passed upon in the court's opinion.

Whatever may have been the age at which majority began under the Spanish law previously in force in Porto Rico, it has been 21 years ever since it was so fixed by an order of the United States military government dated December 18, 1899. The present Civil Code, which went into effect March 1, 1902, has since that date so provided in section 317. See Aguilar v. Vasquez, 6 P. R. 1, 9. Both the above

minors had reached the age of 21 before the date of the above order of 1899. This suit was not begun, therefore, until more than 9 years had passed since the younger of them had become qualified to bring it.

The Supreme Court held (19 P. R. 233) that there could be—

"no doubt that the action to secure nullity of the contracts and stipulations above referred to, if proper, had prescribed by the expiration of the four years which the law provides for its commencement, which period of time is the same as that fixed for the rescission of partitions."

This determination of a pure question of local law is one which this court will not disturb, but, on the contrary, will uphold, except on conviction on its part of clear error committed. Cardona v. Quinones, 240 U. S. 83, 88, 36 Sup. Ct. 346, 60 L. Ed. 538. These two appellants fail entirely to convince us that clear error was committed. There is no attempt on their part to explain or excuse the delay of 9 years. On the theory that they did not become qualified to sue until they were 25 years old, according to the Spanish law before 1899, there is still a delay of more than 4 years left without explanation or excuse.

[3] 2. Nor do the appellants satisfy us that clear error was committed by the Supreme Court in any of the results at which it arrived upon an examination of the merits of their petition, into which examination it entered, notwithstanding its above rulings upon the question of prescription. It has set forth those results in a thorough and careful opinion. Here, also, the matters involved concern purely local law.

The appellants relied mainly upon a contention that the accounting and partition proceedings of 1887 were void, because they were not properly made parties thereto—in the cases of the two minors, because the appointment of a guardian ad litem for them, as shown by the record, was not in accordance with law, and in the case of their mother, represented, according to the record, by an attorney under a power executed by her, because said power authorized the attorney to act only in a "judicial settlement" of the estate to which the proceedings related. The proceedings, though before, and approved, as has been stated, by, a judge of first instance, did not, it is said, constitute a "judicial settlement" within the meaning of the power.

As to the power of attorney in question, under which Elena Graham appears to have been represented in the proceedings of 1887, its due execution by her in New York, on December 13, 1886, is not disputed. By it she granted to Miguel Sainz, of Porto Rico, "authority to take in her name all legal steps necessary for the settlement of the estate of her deceased husband," and, after giving him authority to take various steps specifically mentioned, "to perform all and every act inherent to his power until the final termination of the testamentary proceedings." We cannot treat as clearly erroneous the conclusions of the Supreme Court that Sainz had authority under said power to represent her, whether the estate was settled "judicially" or "extrajudicially," and that her intent, as manifested by the power, was that the settlement should be "judicial" only in case settlement of that character should be found necessary. Accepting said conclusions, we must hold that she became a party to said proceedings, and is bound by their result. Her subsequent approval of the appellee's accounts based upon

them, never withdrawn before she joined in the present suit, affords further support for the above result. Allegations in the complaint that Sainz obtained said power of attorney from her by fraudulent representations are unsupported by any evidence in the record.

[4] The two minors were represented in said proceedings by a guardian (or curator) ad litem, appointed by the court. They now contend that the appointment made was void for want of jurisdiction in the court to make it; that the proceedings were therefore wholly without effect as to them; and that they are at liberty to act without regard to said proceedings, at whatever interval of time, because no prescriptive period has ever begun to run as against them.

The will involved in the proceedings was made under a power of attorney, executed by the testator before his death, and authorizing the appellee to make it thereafter according to directions in the power—a method of testamentary disposition recognized by Porto Rican law. By this power the testator also appointed the appellee tutor and guardian ad bona of his son, the only legitimate child then born to him. The will afterward made by the appellee under said power purported to extend his appointment as tutor and guardian ad bona to the daughter also, who had meanwhile been born, two months after her father's death.

In his petition, whereby the proceedings of 1887 were instituted, the appellee represented that he was guardian ad bona of both children, that he could not legally represent them as guardian ad litem, that appointment of such a guardian to represent them was necessary, that their mother, being interested in the estate as legatee, could not legally so represent them, and that they had no near relatives who could do so. He therefore asked the court to appoint a guardian ad litem for the purpose. The court appointed Benigno Trueba to act in that capacity for both minors. He did so act, and with the approval of their mother, given through her attorney above mentioned, by joining on her behalf in the appellee's petition for approval of the accounting and partition approved as above by the court.

No doubt is suggested that the court of first instance had jurisdiction of the subject-matter of the proceedings, or of the appellee by whose petition they were commenced. Elena Graham had subjected herself to said jurisdiction by her appearance through her attorney, as above held. The necessity for appointing a guardian ad litem to represent the two minor children being suggested to it, we find no reason to doubt that the court had jurisdiction to make such appointment, provided only that in doing so it observed all the applicable requirements of law. These are found in articles 1851–1859 of the Spanish Code of Civil Procedure, then in force, which are quoted in the Supreme Court's opinion. If they were observed in appointing Trueba, the minors were properly before the court, and its jurisdiction to act upon the appellee's petition and approve the accounting and partition submitted, which were accepted by their mother and on their behalf by Trueba, cannot now be questioned by them.

[5, 6] The Supreme Court held that, because his power from his deceased brother had not expressly directed the appellee's appointment

as guardian ad bona for the daughter, the will executed under said power. though purporting to do so, had not in fact made him her guardian. It is said, in view of this, that she at least was not before the court in the matter of appointment of a guardian ad litem for her, because the appellee could not represent her, and no one else did. We find no force in this objection. If her minority and the disqualification of her nearest relatives were truly represented to the court, it can make no difference by whom they were so represented. No request to be appointed was made by her natural guardian, her mother, who was before the court and had the first right to appointment, nor any objection to the proposed appointment by the court on the ground that she was herself disqualified. After approving and accepting, as she has, the result of the proceedings begun by the appellee's petition, she is in no position to assert that the appointment of Trueba was invalid, and the Supreme Court rightly so held.

[7] It is said that, if the mother was disqualified, the law required the appointment of the grandmother of the two minors, then living in Porto Rico, as the next nearest relative. But the grandmother was also a legatee under the will, and having also consented to and approved the accounting and partition, she must also be regarded as having acquiesced in Trueba's appointment. It is true that, in so accepting the accounting and partition, the grandmother renounced her interest in the property in favor of the widow and these minors; but this she did not do until after Trueba had been appointed and had acted, as his appointment required, on the minors' behalf. The Supreme Court found no force in this objection, nor can we find any.

It is said that, if both mother and grandmother were disqualified, the "procurator fiscal" should have been notified and heard upon the question of appointing a guardian ad litem. Articles 1814 and 1823 of the Civil Code of Procedure then in force are relied on. It is certainly far from clear that these articles require any such notice, under the circumstances supposed. If this contention was made before the Supreme Court, which does not appear, it was not regarded as having any claim to consideration requiring its mention in the opinion. The appellants fail to satisfy us that it has any merit.

[8] 3. If, as we think, the Supreme Court rightly refused to declare Trueba's appointment void, both minors were sufficiently represented in the proceedings of 1887, and neither had any right to the new and independent accounting and partition prayed for in the complaint.

The Porto Rican courts, as has been stated, appear to have considered the various allegations made in the complaint charging that in one way or another the defendant had wronged the plaintiffs in the accounting and partition, or in the conveyances which they sought to avoid, or in matters connected therewith. As to some of the questions thus raised, the Supreme Court was uncertain as to the facts, because of the obscurity and doubt in which it found them left by the records of transactions so many years before; and it therefore held that the plaintiffs had failed to sustain the burden of proof. Upon all the questions raised by the allegations referred to, its decision was in the appellee's favor. The plaintiffs fail to satisfy us that, under such

circumstances, we should be justified in holding any of the conclusions adopted by said court to be clearly erroneous.

[9] Only one of the two appellees in the Supreme Court is a party to this appeal. In the view we take of the case, it is unnecessary to consider whether the appeal should be dismissed because Margari, the other appellee, is not a party here.

The judgment of the Supreme Court appealed from is affirmed, and the appellee recovers his costs of appeal.